CHOUTEAU, *Appellant*, v. THE JUPITER IRON WORKS.

83   73
36a 583
83   73
42a 482
83   73
113  658
83   73
80a 595

1. **Contract**: ABANDONMENT, WHEN A QUESTION OF LAW. Where an act, or certain specific acts, are relied on to show an abandonment by one party to a contract, it is proper for the court to declare whether such act or acts constitute an abandonment.

2. ——: MUTUAL ABANDONMENT, QUESTION FOR JURY. A mutual agreement to abandon a contract may be proved by an express agreement to that effect, or by circumstances which warrant the inference that the parties mutually agreed to such abandonment, and it is for the jury to determine whether the contract was so abandoned by mutual consent.

3. **Instructions**: COMMENT ON EVIDENCE. An instruction is improper as being a comment on the evidence which singles out a particular fact and gives it undue importance, but one is not so objectionable merely because it tells the jury that the force of a fact established by the evidence is not what is claimed for it.

4. **Instructions** calculated to mislead the jury are erroneous.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Hermann & Reyburn* and *George A. Madill* for appellant.

(1) It is the duty of the court to construe a contract; to declare its meaning and effect to the jury. *San Antonio v. Lewis*, 9 Tex. 69 ; *Goddard v. Foster*, 17 Wall. 142; *Smith v. Faulkner*, 12 Gray 251; *Thomas v. Thomas*, 15 B. Monroe 178; *Whittelsy v. Kellogg*, 28 Mo. 404. (2) It is the duty of the court to construe an ambiguous contract in the light of the surrounding circumstances. *M. & M. R. Co. v. Jurey*, 111 U. S. 592; *Barreda v. Silsbee*, 21 How. (U. S.) 146; *Nash v. Towne*, 5 Wall. 689; *Canal Co. v. Hill*, 15 Wall. 94. (3) It is the duty of the court, when requested to do so, to *point out to the jury what acts constitute, or have a tendency to prove*, an abandonment of a contract, or a waiver of breach of condition, or a waiver of forfeiture. And it is

the province of the jury to ascertain whether the acts, so pointed out to them by the court, do, or do not, exist. And it is error to leave it to the jury to select what facts do, and what do not have, in law, such tendency. *Henry v. Bassett*, 75 Mo. 95; *Riggins v. Mo. River R. R. Co.*, 73 Mo. 598; *Fine v. Rogers*, 15 Mo. 318; *Blood v. Enos*, 12 Vermont 629; *Devitt v. Pacific R. R. Co.*, 50 Mo. 304. (4) A party who attempts to establish the abandonment of a written executory contract, by the conduct of the parties thereto, must furnish proof of acts, clear and unequivocal in their character, tending to show such abandonment; not those which are ambiguous in their nature. *Fine v. Rogers*, 15 Mo. 318; *Chamber of Commerce v. Sollitt*, 43 Ill. 519; *Quincy v. Felton*, 5 Maine 277; *Williams v. Champion*, 6 Ohio 170. (5) Where, in a written executory agreement, a rescission of the contracts is sought to be established by the acts of the parties, the fact of the written agreement not having been surrendered or cancelled on its face, is *a strong circumstance against the claim of rescission;* a circumstance to be considered by the triers of the fact, in determining that issue; and it is the duty of the court to so declare the law. *Pratt v. Morrow*, 45 Mo. 408. (6) Where a contract in writing has been, by consent, rescinded by parol, it may subsequently, by consent, be revived into full vigor. Such revivifying may be proved by the acts and declarations of the parties without an express agreement. *Graham v. Hollaway*, 44 Ill. 292; *Cuff v. Penn*, 1 Maule & Sell. 21; *Richardson v. Hooper*, 13 Pick. 446.

*Thomas J. Portis* for respondent.

(1) The contract sued on was only conditional. It was not to be in force until the furnace was lighted by defendant, and that was never done, and hence the contract never went into effect. It was optional with the defendant to light the furnace, and having determined not to do so, plaintiff cannot complain. *Scharringhausen v. Luebsen*, 52 Mo. 339; *Riggins v. Ry. Co.*, 73 Mo. 606;

*Brown v. Slee*, 103 U. S. 828; 1 Wharton on Contracts, § 558. (2) The contract in this case must be construed by its own terms. Parol testimony cannot be considered in order to explain or construe it. 2 Kent's Com., 556; *Lash v. Parlin*, 78 Mo. 397; *Huse v. McQuade*, 52 Mo. 388; *O' Neil v. Crain*, 67 Mo. 251. (3) Plaintiff, if he intended to insist on having the furnace started, should, within a reasonable time, have demanded that it be done. 1 Wharton on Contracts, § 602; *Hubbard v. Burton*, 75 Mo. 65. (4) The questions of abandonment and rescission were for the court to determine. *Henry v. Bassett*, 75 Mo. 95; *Pratt v. Morrow*, 45 Mo. 404. Very slight circumstances are sufficient to show the assent of a party thereto when it is obviously for his interest that a contract should be terminated. *Fine v. Rogers*, 15 Mo. 318·

HENRY, J.—This action is for the recovery of damages for breach of the following written agreement, between plaintiff and defendant:

"Agreement made and entered into this 27th day of March, 1877, by and between Pierre Chouteau, of the City of St. Louis, party of the first part, and the Jupiter Iron Company, of the City of St. Louis, a corporation duly organized under the laws of the state of Missouri, party of the second part. Witnesseth: The party of the first part agrees, for and in consideration of the sum of one dollar, in hand paid, and the further sum of money hereinafter named, to enter into the following contract with the party of the second part: The party of the first part hereby agrees to take charge of the blast furnace of the said party of the second part, and to operate it to the best of his ability, and to furnish all labor, skilled and otherwise, including licensed engineers to run the machinery and boilers belonging to the blast furnace; to unload all coke, coal, ore and limestone required by the furnace; to take the iron out of the cast house and pile it in the yard; to furnish all labor required to make repairs of any kind, except where it is required to have

skilled labor. In consideration of the above being well and faithfully done, and to the satisfaction of the president of the company, the party of the second part hereby agrees to pay monthly, on the 14th day of each month, the sum of $2.30 per ton of 2268 lbs., for every ton of iron made during the month, from the 1st to the 31st, both days included. The party of the second part to furnish such ores as are best adapted for making Bessemer metal; coal, known as Big Muddy coal, and Connellsville coke, to be furnished in such proportions as will insure the best working of the furnace. The party of the second part to furnish weighers to weigh all materials going into the furnace and the pig iron coming out of the cast house. No clerk hire to be paid by the party of the first part. This agreement is also based on price of general or common labor, being $1.10 per day; if a general advance or reduction is made over the country, the party of the second part to pay or deduct an advance or reduction equal to that paid elsewhere, or stand between the party of the first part and loss in case of a strike. At the termination of this contract the cost of filling the furnace to be paid by the Jupiter Iron Company, unless I keep it until the natural end of a blast; also, for any stock of ore, fuel and limestone that may be used and unloaded by me. *This contract to be in full force for one year from the time of lighting the furnace.* Should it be necessary to unload any of the coke, coal, ore or limestone outside of the stock house, the Jupiter Iron Company to pay the actual expense of taking it to the stock house when wanted. Should it be necessary to bank up the furnace, the Jupiter Iron Company to pay the wages of such men as may be actually required to care for the furnace.

"Made in duplicate, this 27th day of March, 1877.

[SEAL.]        D. R. GARRISON,        [SEAL.]
               PIERRE CHOUTEAU.        [SEAL.]"

The evidence on the part of plaintiff tended to establish the following facts: Some time in 1873, the de-

fendant erected the furnace known as the "Jupiter Fur-
nace," at a cost of several hundred thousand dollars,
but, owing to the depression in the business, did not
complete it, and in the spring of 1877, concluded to finish
it, in the expectation of lighting the furnace at an early
day.  There was another furnace known as "The Vul-
can," which, it was thought, would consume the products
of both furnaces.  Under these circumstances the above
agreement was made between the parties.  By another
agreement in parol, plaintiff was employed to superintend
the completion of the Jupiter furnace, which he did, and
for which the defendant compensated him.  In the fall
of 1877, the depression in the iron trade continuing, it
was concluded, with evidence of plaintiff's concurrence,
not to light the furnace.  Between the fall of 1877 and
the fall or winter of 1879, the furnace remained idle, and
in that fall or winter, it was leased for a term of five
years to the Vulcan Steel Company, which lighted the
furnace.  There was evidence, consisting of conversations
and correspondence between plaintiff and officers of de-
fendant, tending to prove a mutual agreement to aban-
don the contract between plaintiff and the company, and
the same character of evidence to the contrary.  No ex-
press agreement to abandon it was proved.

The court refused the following instructions asked
by plaintiff: "If the jury find and believe from the evi-
dence that the Jupiter Iron Company and the Jupiter
Iron Works are one and the same body corporate, and
that Daniel R. Garrison was its president on the 27th day
of March, 1877, and that he signed and delivered the con-
tract of that date read in evidence on behalf of that com-
pany, and plaintiff accepted the same and actually entered
upon the duties devolving upon him under the said con-
tract, or was ready, able and willing to carry out the
same, and defendant would not permit him to do so, and
hindered and prevented his performing the duties arising
under the same, or, if defendant disabled itself from car-
rying out its portion of the contract, as by selling or leas-

ing the furnace described in the contract for a term of years, without the assent of plaintiff, then and in that event, plaintiff is entitled to your verdict."

"On the question of abandonment, or rescission of contracts, the court instructs you as follows: If under the first instruction for plaintiff given you, you find and believe from the evidence that the agreement read in evidence was made between plaintiff and defendant, then the court instructs you that before you can find an abandonment of the contract by both parties, the burden is on defendant to prove to your satisfaction that the contract has been abrogated or rescinded by mutual consent; and to abrogate or rescind a contract by mutual consent, after it is once entered into, requires a meeting of the minds of the contracting parties; and unless you find that the minds of the parties met on the fact of rescinding or abrogating the contract, you cannot find that a rescission of the contract took place. And while you may infer a rescission of the contract from the acts and conduct of the parties, yet such acts and conduct must be clear and unequivocal, and not be referable to any other fact than a giving up of the contract by consent of both parties. The mere fact, if you find such to be the fact, that plaintiff assented to defendant's not lighting the furnace in the spring of 1877, would not, of itself, authorize you to draw the conclusion that he thereby abandoned the contract, and his rights thereunder, to run the furnace after it was lighted."

"And the court further instructs you on the point of abandonment, as follows: If you find that, at, or after, the time of the alleged abandonment or rescission of the contract, the written agreements were not surrendered nor cancelled, but were retained by the parties thereto, then the fact of the writings being so retained by the parties, and not being surrendered for cancellation, is a circumstance tending to show that the contract was not abandoned. This circumstance is to be weighed by you, in connection with the general conduct of the parties at, and

after, the period of the alleged rescission, in order to determine the fact whether the contract was or was not abandoned by consent of all parties."

"If, under the instructions numbered two and three, given you on behalf of plaintiff, you find from the evidence that the contract was not abrogated or rescinded, then the court instructs you that the fact that plaintiff waited from 1877 till the fall of 1879 without a demand on defendant to start the furnace does not, of itself, deprive him of the right to run the furnace when it was started. And if you further find that in the fall of 1879, when plaintiff learned that steps were being taken looking to the starting of the furnace, he notified defendant of his readiness and ability to carry out the terms of said contract, and demanded to be put in charge of the furnace, and if you find that at the time of such notice and demand plaintiff was able and willing to carry out his portion of the agreement, and if you find that defendant repudiated or denied the existence of said contract between the parties, and proceeded to, and did, make the lease to the Vulcan, read in evidence, and thereby disqualified itself from carrying out its contract with plaintiff, and made no provision in its contract with the Vulcan for the protection of the plaintiff's rights under the contract, then the court instructs you that the rights of the plaintiff became and were fixed from the date of such repudiation of the contract, if you find one to have taken place, and plaintiff was not bound to tender performance on the day the furnace was lighted."

"Finally, the court instructs you that under the terms of the contract read in evidence, plaintiff's contract was to become operative from the date when the furnace was started into operation by defendant, and, under such contract, plaintiff did not have the right to compel defendant to start this furnace of defendant, prior to the time when defendant decided to light the same."

The court then of its own motion gave the following instructions: "If the jury believe from the evidence that

on the 27th day of March, 1877, Daniel R. Garrison was president of the Jupiter Iron Works, and that he signed and delivered the contract of that date, which has been read in evidence for and on behalf of said Jupiter Iron Works, and that plaintiff accepted the same, and thereafter remained ready and willing to enter upon and continue in the performance and discharge of his duties thereunder, and that the defendant refused to allow plaintiff to perform said contract, or prevented him from so doing, or that defendant disabled itself from carrying out its part of said contract, then, and in that event, your verdict should be for plaintiff, unless you further believe that after the making of said contract it was abandoned by mutual consent of the parties thereto, and the burden of showing such abandonment is on the defendant."

"If the jury believe from the evidence that after making and delivery of the alleged contract, the parties thereto mutually abandoned the same: that is to say, mutually consented that the agreement should not be carried out, then you should find for defendant."

"The court further instructs the jury that in order to establish an abandonment of the contract in question, no formal proposition to abandon the same, made by one party and accepted by the other, need be shown, but the fact that the same was abandoned by mutual consent may be inferred from the conduct, acts and declarations of the parties thereto."

"If the jurors, therefore, upon a consideration of all the acts, declarations, conduct and dealings of the parties, are of the opinion and so find, that after the making of the contract, the plaintiff consented to an abandonment of the same, then they should find for the defendant."

And at defendant's instance gave the following: "The jury are instructed, if they believe from the evidence that, on entering into the contract read in evidence, the plaintiff and defendant mutually intended to place the Jupiter furnace in blast as soon as the necessary repairs

could be made, and a stock of coal, ore and coke could be brought together for the purpose of lighting the furnace, and that while this was being done it was mutually agreed by all parties in interest, including the plaintiff, that all work thereon should be stopped, and that the purpose of placing said furnace in blast should be abandoned, without any agreement at the time that it should be put in blast at any future time under the contract between plaintiff and defendant, then you must find for defendant."

The jury found for defendant, and the court rendered a judgment thereon from which plaintiff appealed to the court of appeals, in which there was a *pro forma* affirmance, and defendant has prosecuted his appeal to this court.

The only questions discussed by appellant's counsel, in their brief, relate to the refusal of instructions asked by plaintiff, and the giving of instructions by the court of its own motion, and only those questions will we consider. It is contended that the instructions given by the court are similar to the instructions condemned by this court in *Henry v. Bassett*, 75 Mo. 89, and in conflict with what was held on the same subject in *Devitt v. Pac. R. R.*, 50 Mo. 304, and *Riggins v. Railroad Co.*, 73 Mo. 598.

In the case of *Henry v. Bassett*, the evidence in relation to the abandonment of the contract was not preserved and the observations of the court were that: "The fifth instruction declares that, if, after the contract was concluded, the plaintiff abandoned it, and did not perform any services under it, and if defendant did, and procured to be done all the services under said contract which have been done, then plaintiff cannot recover. If the evidence in relation to the abandonment    *    *    had been preserved, we would have some light upon this instruction, which might enable us to pass upon it. What the facts relied upon to constitute an abandonment are, we are not informed. They should have been given, and the

court declared their effect. It was improper to submit it to the jury to say whether the contract was abandoned or not."

When an abandonment by one party to a contract is predicated of certain specific acts, or one given act, it is proper for the court to declare whether such act or acts constitute an abandonment. But where a mutual agreement to abandon is relied upon, it may be proved by an express agreement to that effect, or by circumstances which warrant the inference, that the parties mutually agreed to abandon it. An instruction, such as appellant's counsel insist on, would have necessitated the embodiment in the instruction of a mass of the testimony, conflicting and contradictory, and would have no more guided the jury to a correct conclusion than the instructions given. The jury were not told that they were to determine whether the agreement had been *abandoned;* but whether it was abandoned "by the mutual consent of the parties thereto;" and this was further explained as follows:

"If the jury believe from the evidence that, after making and delivery of the alleged contract the parties thereto mutually abandoned the same: that is to say, mutually consented that the agreement should not be carried out, then you should find for defendant." The court further instructed: "That in order to establish an abandonment of the contract in question, no formal proposition to abandon the same, made by one party and accepted by the other, need be shown, but that the fact that the same was abandoned by mutual consent, may be inferred from the conduct, acts and declarations of the parties thereto."

The instructions on that branch were as full and minute as the nature of the case admitted. It is unlike the case of *Henry v. Bassett*, in which no mutual agreement of abandonment was alleged, but it was charged, that the plaintiff, Henry, had abandoned the contract, and defendant relied upon certain specific acts, as establishing the fact, among others, that he had neglected or re-

fused to assist defendant in the work they were jointly employed to perform. The plaintiff asked the court to declare to the jury, that if they found "that at, or after the time of the alleged abandonment, or rescission of the contract, the written agreements were not surrendered, or cancelled, but were retained by the parties, then that fact is a circumstance tending to show that it was not abandoned." "This circumstance is to be weighed by you, in connection with the general conduct of the parties at and after the period of the alleged rescission, in order to determine the fact, whether the contract was, or was not abandoned by consent of all parties." The objection to that instruction is, that it is a comment upon the evidence. That it singles out one of many facts and gives it undue importance. The retention of the agreement was a part of the conduct and acts of the parties, and the jury were expressly told by the court, in the instructions given, "that the fact that the same was abandoned by mutual consent, may be inferred from the conduct, acts and declarations of the parties."

The first of plaintiff's refused instructions was substantially embraced in the first given by the court of its own motion. The second should have been given. It is not in conflict with either of those given, and plaintiff was entitled to have the jury instructed, that the fact that plaintiff assented to defendant's not lighting the furnace, in the spring of 1877, would not, of itself, authorize them to draw the conclusion, that he thereby abandoned the contract, and his right thereunder to run the furnace after it was lighted. It was not a comment upon the evidence as that objection to an instruction is understood. It is not selecting one proved fact and giving it undue prominence but it is instructing the jury that the force of an established fact, is not what is claimed for it. The fourth instruction, or its equivalent, should have been given. In none of the instructions given, did the court construe the contract, and the jury could not intelligently pass upon the question of abandonment until

they had a clear understanding of the rights of the parties under the contract. The fourth instruction in its concluding paragraph declared the true meaning of the contract, and the preceding paragraph of the instruction correctly declared the law, and is consistent with the instructions given by the court.

The instruction given at the instance of defendant is erroneous as calculated to mislead the jury to the conclusion, that if, while necessary repairs were being made upon the furnace, and the parties were about procuring coke, coal and ore for the purpose of lighting the furnace, plaintiff agreed with defendant that all work on the furnace should cease, and that the purpose of lighting the furnace should be abandoned, that this was an abandonment of his contract. Under that instruction the jury might have understood that a mere temporary suspension of the work and temporary abandonment of the purpose to start the furnace would be sufficient to deprive plaintiff of his rights under the contract. No time was agreed upon for lighting the furnace. By the agreement that was to be determined by defendant, but whenever lighted, plaintiff had a right by the terms of his contract, to have charge of the work. He testified that he agreed to a suspension of the work until a more convenient season for lighting the furnace. That fact, of itself, however, did not amount to an abandonment of the contract. The judgment is reversed and the cause remanded. All concur, except Norton and Sherwood, J. J., who dissent.