Smith v. Keith & Perry Coal Co.

---

BEN. H. SMITH, Respondent, v. KEITH AND PERRY COAL COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1889.

1. **Contracts:** PARTIAL PERFORMANCE: RECOVERY FOR. When a contract is entire only in embracing a given number of facts or things, each of which is complete in itself and of value, such as in this case, to deliver a given number of tons of hay at different times, in bales and loose, or in installments or parcels, performance to any given number of these distinct and separate things, as the delivery and acceptance of several tons of such hay, will authorize a recovery to that extent, although all may not have been performed.

Smith v. Keith & Perry Coal Co.

2.    ———: ———: MEASURE OF DAMAGES WHEN PERFORMANCE PRE-
VENTED. While in cases of only partial performance by the con-
tractor, the measure of damages is the actual value of the work
and materials not exceeding the contract price, less such damages
as have resulted to the other party from the breach of the con-
tract, yet when the performance is prevented by the unwarranted
act of such other party, the rule is different, and it was proper in
this case to instruct the jury that if the plaintiff was prevented
from fully performing his part of the contract by the unwarranted
acts of the defendant, then the measure of damages was the mar-
ket value of the hay delivered.

3.    ———: PERFORMANCE PREVENTED : RESCISSION. Where the con-
tract is entire as for the delivery of one hundred and ~~forty~~ *twenty* tons of
hay of a certain kind, the defendant could no more reject two
loads of the stipulated quality than it could one hundred and
forty tons, and upon notice of such rejection the plaintiff was jus-
tified in rescinding the contract, and it was proper to instruct the
jury to that effect.

4.    ———: ———: ———. Nor is it a valid objection to such
instruction, that it led the jury to ignore the defendant's claim for
damage for the plaintiff's failure to deliver the full quantity of
hay set up in its answer, and the defendant can not recover dam-
ages against plaintiff for a non-performance of the contract which
was occasioned by a primary breach thereof on its part.

*Appeal from the Bates Circuit Court.*—HON. D. A.
DEARMOND, Judge.

AFFIRMED.

*Gantt & Casey*, for the appellant.

(1) The demurrer to the evidence should have been
sustained. The contract was an entirety and not sev-
erable. On the plaintiff's own evidence, and admis-
sions, the whole amount of hay was to be delivered
before paid for, and no legal reason was given for his
refusal to comply with the contract. *Champlin v.
Rowley*, 13 Wend. 258; *Haslack v. Mayers*, 26 N. J.
L. 284; *Jennings v. Lyons*, 39 Wis. 553; *Witheron v.
Witheron*, 16 Ohio, 238; *Timmons v. Nelson*, 66 Barb.
594; *Barrie v. Seidel*, 30 Mo. App. 559; *Paige v. Ott*, 5

Denio, 406. (2) But, granting that plaintiff could recover for the amount of hay delivered, still defendant is entitled to a reversal, because the court erred in giving the instruction it gave of its own motion. Because this instruction permitted plaintiff to recover the market value long after the making of the contract, without limiting him to the contract price. Under the case made by plaintiff, the contract price was the limit of recovery. *Yeates v. Ballentine*, 56 Mo. 530; *Eyermann v. Cemetery*, 61 Mo. 489; *Davis v. Brown*, 67 Mo. 313. (3) The court erred grievously in not qualifying the right of plaintiff to sue in *assumpsit* at all, unless defendant had, by its conduct, evinced an intention not to comply with the contract on its part. Under the court's instruction, the rejection of one bale of hay of one hundred pounds would justify the jury in saying defendant had prevented plaintiff in complying with the contract on his part, and thus justify plaintiff in violating his contract. This is not the law, and ought not to be. *Blackburn v. Reilly*, 47 N. J. L. 290; 2 Benj. on Sales, pp. 784-904; *Freeth v. Burr,* L. R. 9 C. P. 208; *Simpson v. Crippen*, L. R. 8 Q. B. 14; Benj. on Sales [4 Am. Ed.] sec. 903, p. 783. The court, having assumed to instruct the jury, should have given the law fully, and with the necessary qualification. (4) In this instruction, the court of itself both justifies plaintiff in refusing to carry out his contract on the sole ground that defendant rejected the hay it was bound to receive, and placed defendant's right to recover damages on the idea that it had not rejected any hay it ought to have received, without any modification. We submit the instruction is too narrow in scope. *Clark v. Hammerle*, 37 Mo. 70 : *Sawyer v. Railroad,* 37 Mo. 240-263; *Steel & Iron Co. v. Naylor*, 51 L. J. Q. B. 576; *Fitzgerald v. Hayward*, 50 Mo. 516; *Mansur v. Botts*, 80 Mo. 651, and cas. cit.; *Bank v. Murdock,* 62 Mo. 70.

*T. W. Silver*, for the respondent.

(1) If plaintiff, under this contract, was bound to furnish good merchantable hay, and a failure on his part to furnish it was a breach of the contract by him, then a failure to accept such hay by defendant, when tendered, was equally a breach of the contract by defendant. Plaintiff considered it a breach and brought his action for the value of the hay sold and delivered. That several loads of hay were rejected was admitted by defendant. Its quality was a question of fact, submitted to and determined by the jury from all the evidence. *Dobbins v. Edmonds*, 18 Mo. App. 316; *Stumpf v. Mueller*, 17 Mo. App. 283; *Attix, Noyes & Co. v. Delan*, 5 Iowa, 352. It is a familiar doctrine of the law of contracts that, if one party is prevented from fully performing his contract, by the fault of the other party, the latter can not take advantage of his own wrong to exempt himself from liability. *Smith v. Monroe*, 1 Pac. Rep. 909; *Pond v. Wyman*, 15 Mo. 177; *Nearns v. Harbert*, 25 Mo. 352; *Dobbins v. Edmonds*, 18 Mo. App. 315. (2) If respondent was prevented from completing his contract, by defendant's refusal to receive hay of the kind and quality he had contracted to receive, then plaintiff had the right to consider the contract at an end; and in such case he could sue for the market value of the hay, and is not restricted to the contract price, per ton. *McCullough v. Baker*, 47 Mo. 401; *Mitchell v. Scott*, 41 Mich. 108; *Fitzgerald v. Allen*, 128 Mass. 234; *Ehrlich v. Ins. Co.*, 88 Mo. 219. (3) If plaintiff had conferred on defendant a favor not meant to be gratuitous, if his property had gone to enrich defendant, or his labor had been received by and of benefit to defendant, under a contract only partially performed, and then without the fault of defendant, voluntarily abandoned by plaintiff, still it would be manifestly unjust to allow defendant to retain such

property, or the benefit conferred, without paying anything therefor ; but under such circumstances the plaintiff could not recover exceeding the contract price. Bish. Cont. [new enlarged Ed.] pp. 587, 588, secs. 1442, 1443, 1444, 1445 ; *Ahern v. Boyce*, 19 Mo. App. 552. But after breach of the contract by defendant, plaintiff is no longer restricted to the contract price. *Ahern v. Boyce*, 19 Mo. App. 552 ; *McCullough v. Baker*, 47 Mo. 401. (4) But this is not a case where plaintiff seeks to recover on a contract only partially performed, and then wilfully abandoned by him without the fault of defendant, and the principles of the foregoing paragraph are inapplicable, and the limitation insisted upon in paragraph 2 of appellant's points and authorities— while good where a party sues on a contract broken by himself, would have been error when he prosecutes his action on breach of the contract by defendant—and for the value of the property delivered. *Cox v. McLaughlin*, 52 Cal. 590-597. (5) But the defendant says "the court erred grievously in not qualifying the right of plaintiff to sue in *assumpsit* at all"—and in support of this position invokes the English rule laid down in *Simpson v. Crippen*, L. R. 8 Q. B. 14 ; 2 Benj. Sales, [4 Am. Ed.] p. 783, sec. 903. To avoid the injustice of enforcing the terms of a contract by one who has deviated therefrom, as in the case of *Simpson v. Crippen*, the English courts resort to the theory of abandonment of the contract by the party in fault and hold that the party so defaulting, even in one delivery or one payment, "has evinced an intention to abandon and be no longer bound by the contract," and this is a question of evidence. Benj. Sales [4 Am. Ed.] p. 787, note 26. The rigid rule laid down in *Simpson v. Crippen*, which has not escaped criticism, even in England, has not been generally followed in America, and has been repudiated by the supreme court of the United States. Benj. Sales [4 Am. Ed.] p. 787, note 26 ; 3 Am. and Eng. Cyclopædia of Law, p. 925 ; *Norrington v.*

*Wright,* S. C. U. S. No. 13, Oct. Term, 1885 ; U. S. S. C. 115, p. 188, Book 29 [Lawyers Co-operative Ed.] p. 366 ; *Stewart v. Many,* 7 Ill. 508 ; *Reybold v. Voorhees,* 30 Penn. 116–120 ; *Stephenson v. Cady,* 117 Mass. 6 ; *Mills v. Slater,* 12 R. I. 82 ; *Ehrlich v. Ins. Co.,* 88 Mo. 249.

SMITH, P. J.—This action was brought in the circuit court of Bates county by the plaintiff against the defendant on an account for fifty-seven tons of hay of the value of five hundred and seventy-five dollars sold and delivered to the defendant by the plaintiff.

The answer denied that the defendant had bought of the plaintiff, or that he had delivered the hay or any part thereof, as stated in the petition. The answer further set forth the separate defense and counter-claim that on or about the —— day of June, 1887, plaintiff made and entered into a contract with defendant, whereby plaintiff bound himself to deliver to this defendant, at its mine in Bates county, Missouri, on or before the month of May, 1888, one hundred and twenty tons of good merchantable hay at and for the price and sum of five and fifty-hundredths dollars per ton for baled hay; and at and for the price and sum of four and fifty-hundredths dollars for loose hay ; that under said contract plaintiff did deliver to defendant thirty-eight tons and ten hundred and ninety-two pounds of baled hay, and nine tons, seven hundred and forty-five pounds of loose hay, aggregating forty-seven tons, eighteen hundred and thirty-seven pounds of hay of the contract value of two hundred and fifty-four and seventeen-hundredths dollars, on which defendant, at divers times, paid plaintiff in cash, groceries and wire, one hundred and forty-seven and forty-eight-hundredths dollars.

Thereupon without any just cause, plaintiff refused to carry out his contract, and refused to deliver the

Smith v. Keith & Perry Coal Co.

remainder of said hay although often requested so to do, whereby defendant was compelled to, and did go into the open market and buy sixty-one tons of hay, at a cost of five hundred and fifty and eighty-five-hundredths dollars, the market price at the time said hay should have been delivered, at a loss of two hundred and fifteen and thirty-six-hundredths dollars, whereby defendant is damaged in said last-named sum, for which it asks judgment, and that the same may be recouped in this action, and for all its costs.

The replication admitted the special contract set forth in defendant's answer and that plaintiff did not carry out said special contract but pleaded as an excuse therefor that after he had delivered defendant a number of tons of hay that it refused to receive any more, and that it rejected several tons of good merchantable hay delivered to it under said contract.

On the trial, evidence was introduced tending to show that between the eighth day of July and the twenty-fourth day of September, 1887, the plaintiff under said contract delivered the defendant fifty-two tons of hay and that he did not deliver any more because the defendant had rejected and refused to receive several loads which he had offered to deliver and which was the very best blue-stem merchantable hay. The plaintiff testified that "defendant received two or three loads of that bottom hay, but the third or fourth load they refused to take, and my men took it to Sprague, and sold it to B. F. Blake & Co. It was the very best of hay that grew in the bottom, so considered by stockmen, coarse, blue-stem hay.

"I then refused to haul them any more hay there, or have anything further to do with it, but they got Mr. Allen, their clerk, to come and see me to induce me to continue to supply them with hay. I then told him I would make a second effort to fill the contract, and I commenced to deliver again. Don't know how much I

did deliver the second time, but after we had delivered a few loads, they began to throw out a bale now and then and kept this up several days. Saturday evening going home from the bottom, I called for the rejected hay and was told that by mistake it had been taken to the bottom of the coal pit and that it would be all right. I went to hauling again Monday. They went to hauling. Hauled three or four loads there and the fourth load I think it was, maybe the fifth, they refused to accept. My driver, Bowser, took this load to M. S. Cowles mercantile company, and they accepted it as good hay.

"It was good merchantable hay. I went home, I think, on Tuesday evening. I didn't know they had refused this hay, at that time, or that Weathers had accepted it. I stayed at home that week until Saturday, and the boys came up and told me they had rejected it. On Friday I got a letter from the defendant saying there were two loads of hay rejected and awaiting my orders. Mr. Walterhouse told me on Monday or Tuesday that they had received them and put them in the mow, and Saturday notified me that they were rejected. After that I made no further effort to fill the contract."

There was further evidence tending to show that the plaintiff's entire crop of hay was bottom or blue-stem and that that which had been rejected was representative in quality. There was also evidence tending to show that the rejected hay was not of merchantable quality. There was evidence showing that the defendant's superintendent had after the rejection of plaintiff's hay requested a fulfillment of the contract.

There was some further evidence showing that hay advanced in price and that the defendant purchased some forty tons of hay of other parties at about eight dollars and seventy-five cents per ton and that this was about what it was worth at the places where plaintiff had agreed to deliver it to defendant.

For the purpose of determining the questions before us no further statement of the evidence need be made just here.

The circuit court upon its own motion gave, over the objections of the defendant, this instruction :

" The jury are instructed that it stands admitted by the pleadings that there was a special contract between plaintiff and defendant for the sale and purchase of the hay sued for, and other hay.

" By such special contract plaintiff was bound to supply to defendant the quantity and quality of hay contracted for, and at the contract price.

" By such contract, also, defendant was bound to accept the hay which plaintiff was bound to deliver, and to pay for it at the agreed price.

" Plaintiff had no right to deliver to defendant a different kind or quality of hay from that contracted for, and defendant was not bound to accept other or inferior hay. Defendant had no right to reject any hay tendered or delivered by plaintiff, providing the same was such as was contracted for, but had the right to reject any hay different from or inferior to that contracted for.

" Plaintiff has sued in this case as if there had been no special contracts between the parties, and his action can be maintained only in case the defendant rejected hay such as it was bound to receive from plaintiff, and plaintiff, because of such rejection, abandoned the contract and delivered no more hay to defendant.

" If defendant rejected the hay such as it was by the contract bound to receive, such action upon defendant's part would amount to a breach of the contract by defendant, and thereupon plaintiff would have a right to regard the contract at an end. If defendant rejected hay which, by the contract, it was not bound to receive, such action upon its part would not afford plaintiff any excuse for abandoning the contract on his part, or if

plaintiff did not abandon the contract because of defendant's rejection of hay furnished by him, he would not be entitled to recover in this action.

"If you find for plaintiff you should assess his damages at the amount of the reasonable market value of the hay which he delivered to defendant, less the amount you find was paid him by defendant.

"If you find for the defendant, you should further find what, if any, damages were sustained by defendant as the direct result of plaintiff's failure. If you find there was a failure not occasioned by defendant's rejection of hay which it ought to have received, to supply to defendant all the hay contracted for, in such case the measure of defendant's damages would be the difference between the contract price of the hay not delivered and the market value of the same at and about the place where the hay was to be delivered.

"It being admitted that there was a contract of sale and purchase between the parties with reference to the hay in question, the burden of proof rests upon the plaintiff to show that he was released from the obligation to supply all the hay contracted for by a violation of the contract upon defendant's part, in rejecting hay such as it should have accepted.

"If defendant rejected hay which it ought to have accepted, and plaintiff, by reason of such action, treated the contract as at an end and supplied no more hay to defendant, in such case it is immaterial whether or not former rejections of hay by defendant were rightful or wrongful, or whether or not plaintiff acquiesced in or overlooked the same." The verdict of the jury and the judgment of the court were for plaintiff.

The defendant has prosecuted its appeal to this court.

I. The defendant's first ground of appeal is that the contract was an entirety and indivisible, and that

therefore the plaintiff on his own evidence was not entitled to recover, as he had not shown that he had delivered the whole amount of hay required by the contract.

In 2 Parsons on Contracts, 29–31, it is said that, "if the part to be performed consists of several distinct items and the price to be paid by the other is apportioned to each item to be performed or is left.to be implied by law such a contract is severable  *  *  *. But if the consideration to be paid is single and entire, the contract may consist of several distinct and independent items.

"When a contract is entire only in embracing a given number of acts or things, each of which is complete in itself and of value, performance to any given number of these distinct and separate things will authorize a recovery to that extent although all may not have been performed."

The supreme court of this state in *Yeates et al. v. Ballentine*, 56 Mo. 535, has approved and adopted the doctrine of Parsons on Contracts, volume 2, part 11, section 5, where it is said that "when parties make a contract that is not apportionable, no part of the consideration can be recovered in an action on the contract until the whole of that for which the consideration was to be paid is performed. But it must not be inferred from this that a party who has performed a part of his side of the contract and has failed to perform the residue is in all cases without a remedy. For though he can have no remedy on the contract as originally made, the circumstances may be such that the law will raise a new contract and give him a remedy on a *quantum meruit,*  *  *  *. If one party, without the fault of the other fails to perform his part of the contract in such manner as to sue on it, still if the other party has derived benefit from the part performed, it

would be unjust to allow him to retain that without paying anything. The law therefore generally implies a promise on his part to pay such remuneration as the benefit conferred is reasonably worth, and, to recover that *quantum* of remuneration, an action of *indebitatus assumpsit* is maintainable."

And there is a similar statement of this rule in Sedgwick on Damages, 254. It is stated by this author that, "whenever a contract is indivisible, but one action can be brought for damages resulting from its non-performance, but it often becomes a question how far a contract is to be treated as entire.

"And a modification of that general rule which makes the agreement control the amount of the damages is also to be found in that class of cases where the contract on its face is an entire one and having been performed only in part, compensation is sought for what has been actually done, such as agreements to work for a specified time for a given sum when the party employed quits the employment without the consent of the other party and before the period fixed ; agreements to deliver a certain quantity ₁of goods and delivery of only a part.

"Agreements to do, as buildings for instance, according to certain specifications where the work is done, but the specifications departed from, whether the party failing to perform his agreement strictly has any redress whatever, and to what extent, is a very delicate and much vexed question."

In *Yeates et al. v. Ballentine*, Judge NAPTON, who delivered the opinion of the court, remarked that "this doctrine," referring to Parsons on Contracts, volume 2, part 11, section 5, already quoted, "has been applied occasionally to these classes of cases, those *arising on contracts for sales;* on contracts for work and labor and materials and on contracts for services for a specified time. In the first class of cases the doctrine is established in England and we suppose generally in this country."

In *Duncan v. Baker*, 21 Kan. 99, it is said "this doctrine in view of its manifest justice is likely to grow in favor until it becomes universally recognized." *Britton v. Turner*, 6 N. H. 481, is a leading case with reference to contracts for personal services, but the principles of that case have been applied to each one of these classes mentioned by Judge NAPTON in *Yeates et al. v. Ballentine.* In the Kansas case just cited it is stated upon the authority of Field on Damages, section 327, that the doctrine of *Britton v. Turner* is fully or partially recognized in Michigan, Wisconsin, Illinois, Indiana, Pennsylvania, Maine, Texas, New York, and Missouri.

The first ground of the defendant's appeal can not be sustained, for it is apparent that the contract in question was for a given number of tons of hay which was to be delivered at different times in bales and loose, or in installments or parcels. The answer admits the partial performance of the contract in that the plaintiff delivered, and the defendant received, a certain quantity of hay under its provisions, and it must follow from these considerations that the plaintiff's action was properly brought.

II.   The defendant assails the instruction given by the court on the distinct ground that it permitted the plaintiff to recover the market value of the hay instead of limiting such recovery to the contract price. In Sedgwick on the Measure of Damages, 254, the rule is stated to be that "the contract furnishes the measure of remuneration whether the contract has been departed from, with or without mutual consent."

In *Yeates et al. v. Ballentine*, it was said that a contractor who failed to comply with his contract loses whatever damages such failure may occasion, and is not allowed under any circumstances to claim beyond the *contract price*, and at the same time, deducting such damages as result from any inferiority of the work or materials to what is required in the contract, is to be

paid for what his labor and materials are reasonably worth to the party using them. The St. Louis court of appeals in *Ahern v. Boyce*, 19 Mo. App. 552, upon the authority of *Yeates et al. v. Ballentine; Eyermann v. Mt. Sinai Cem. Ass'n*, 61 Mo. 490, and *Davis v. Brown*, 67 Mo. 313, decided that a party may recover the reasonable value of his labor and materials furnished under a building contract which he left unperformed, even though guilty of a breach of it. The measure of damages being the actual value of the work and the materials, not exceeding the contract price less such damages as have resulted to the other party from the breach of the contract.

But the rule is different where one is prevented from carrying out the contract by the unwarranted act of the other party. In *McCullough v. Baker*, 47 Mo. 401, it is declared that a contractor, who is prevented from completing his job by the unwarranted acts and defaults of the other party, may either sue upon the contract and claim damages for the breach thereof, or he may waive the contract and sue for the reasonable value of the work, and in the latter case he is not restricted to the *pro rata* share of the contract price." And this rule was re-affirmed by the supreme court in *Ehrlich v. Ins. Co.*, 88 Mo. 249. The theory of the instruction was that if the plaintiff was prevented from fully performing his part of said contract by the unwarranted acts of the defendant, then the measure of damages was the market value of the hay delivered.

In view of the law as it has been declared by the supreme court of this state in the cases last cited, it would seem that the instruction laid down a correct rule for the admeasurement of damages in the case.

III. The defendant further assails said instruction on the ground that it erroneously directed the jury that if the defendant rejected hay such as it was bound to receive, such action on the part of the defendant would

amount to a breach of the contract by defendant, and that thereupon plaintiff would have the right to regard the contract as at an end.

Defendant insists that this instruction should have been qualified so as to submit to the jury the question whether the defendant had by its conduct evinced an intention to repudiate the contract.

This instruction therefore raises the question whether or not the refusal of hay by the defendant which it was bound to receive under said contract authorized the plaintiff to rescind. The defendant, to support its contention in this regard, has cited the often referred to case, in the books, of *Simpson v. Crippen*, L. R. 8. Q. B. 14.

This was a case where, under a contract to supply from six thousand to eight thousand tons of coal to be taken by the buyer in wagons from the seller's colliery in equal monthly quantities for twelve months, the buyer sent wagons for only one hundred and fifty tons during the first month, and it was held that this did not entitle the seller to annul the contract and decline to deliver any more coal, but that the only remedy was by an action for damages.

This case affords very slight support to the defendant's contention. It is discountenanced in other well considered cases decided by both the Queen's Bench and the House of Lords.

In *Reater v. Sala*, 4 C. P. D. 239, under a contract for the sale of about twenty-five tons of black pepper, October and, or, November shipments from one port to another, the name of the vessel, marks and full particulars to be declared to the buyer in writing within sixty days from the date of the bill of lading, the seller within sixty days declared twenty-five tons by a particular vessel, of which twenty tons were shipped in November and five tons in December, it was held the buyer had the right to refuse to receive any part of the pepper.

In *Houck v. Muller*, 72 B. D. 92, under contract for the sale of two thousand tons of pig iron to be delivered to the buyers, free on board at the maker's wharf, in in November or equally over November, December and January next, the buyer failed to take any iron in November, but demanded one third in January, and it was held that the seller was justified in refusing to deliver, and in giving notice to the buyer that he considered the contract as cancelled. *Bowes v. Shands*, 12 B. D. 470 ; 2 Q. B D. 112 ; 2 App. Cas. 453, after conflicting decisions in the Queen's Bench Division and the court of appeals, was finally determined by the House of Lords.

In that case two contracts were made for the sale of three hundred tons of Madras rice to be shipped during March and, or, April. All but fifty bags of the rice was shipped in February. In an action against the buyer for refusing to accept the cargo, the House of Lords held that it could not be maintained because the meaning of the contract was upon the face that the rice must be put on board in March and April, or in one of those months.

But the doctrine of the case of *Simpson v. Crippen*, has been disapproved and condemned by the supreme court of the United States in the case of *Novington v. Wright*, 115 U. S. 188, in which Mr. Justice GRAY, in delivering the opinion of the court, remarked that "upon a review of the English decisions, the rule laid down in the earlier cases, as well as the later cases of  *Reater v. Sala* and *Houck v. Muller*, appeared to be supported by a greater weight of authority than the rule stated in the intermediate case of *Simpson v. Crippen*, and to accord better with the principles affirmed by the House of Lords in *Bowes v. Shands*.

The rule to be fairly deduced from the English cases which stand opposed to that of *Simpson v. Crippen*, and which have been recognized by the supreme court of the United States, is that a contract which is indivisible and to be fulfilled by the delivery of a commodity

in installments, that the failure to deliver or receive an installment, in accordance with the contract, releases the other party.

The defendant rejected hay which it was bound to receive under the contract, as was found by the jury. The contract was entire. It was for one hundred and forty tons of hay, of a certain kind, and we think, upon principle, defendant could no more reject two loads of the stipulated quality than it could one hundred and forty tons. The rejected hay was fairly representative of the quality of the plaintiff's entire crop. He had no other kind. Defendant's refusal was absolute and unequivocal. It notified plaintiff in writing of its rejection of the hay.

If this rejected hay was merchantable hay, as was found by the jury, then, upon notice of its rejection, the plaintiff was justified in rescinding the contract. *Smoot's Case*, 15 Wall. 34.

Whether the facts hypothecated by the instruction constituted an abandonment or repudiation of the contract by the defendant was for the court to declare. *Chouteau v. Iron Works*, 83 Mo. 73 ; *Bassett v. Henry*, 75 Mo. 90.

The instruction, though not in terms, did, in effect, tell the jury that if they found from the evidence that the defendant refused to accept merchantable hay which it was bound to receive under said contract, that this fact evinced an intention on the part of the defendant to abandon the contract. The defendant objects that the instruction led the jury to ignore the defendant's claim for damages. This undoubtedly was the inexorable logic of this instruction. If the defendant refused to receive merchantable hay, which it had bound itself by the contract to receive, it thereby set aside an essential provision thereof, and we are unable to recall any principle of law that would entitle it to recover damages

against plaintiff for a non-performance of the contract which was occasioned by a primary breach thereof on its part.

If the defendant was the first to break an essential undertaking in the contract as was found by the jury, it has no just ground of complaint on account of the consequences resulting therefrom. We are unable to perceive any error in the record which would justify our interference with the judgment.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed.