W. L. BAKER & SON, Respondents, v. JAMES McKIN-NEY, Appellant.

### Kansas City Court of Appeals, March 4, 1901.

1. **Sales: QUALITY OF GOODS: PLACE OF DELIVERY.** The quality of goods sold is to be determined by the market grades at the place of delivery, and the fact that they may have been shipped from a neighboring place does not change the rule.

2. ——: ——: ——: EVIDENCE. One who has some years in the past been engaged in the handling of the goods sold at the place of delivery and neighboring places, may testify as to the market grades of the goods in controversy at such place.

3. ——: ——: ——: ——: PRACTICE. Where a party offers to prove what the grade of the goods is at other places than the place of delivery, and is refused, and it is afterwards shown that the goods are graded the same everywhere, he should renew his offer or he waives his objection to its refusal.

4. ——: PLACE OF DELIVERY: PLACE OF SHIPMENT: CHANGE OF CONTRACT. Where goods are to be delivered at a certain place, the fact that they are shipped from another place is wholly immaterial, especially, where the consignee subsequently orders them forwarded to still another place, as the latter is an order for delivery and a modification of the contract.

5. ——: REFUSAL TO ACCEPT. Where the purchaser fails to accept a part of the goods on the ground of their inferior quality, the vendor may sell to another and recover his damages from the original vendee.

---

Baker & Son v. McKinney.

---

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,*
Judge.

AFFIRMED.

*Ben. T. Hardin,* for appellant.

(1) Plaintiff never delivered the onions in controversy
where, by the terms of the contract, he was required to deliver
them, and what he shipped were not such as called for by the
contract, and he is not entitled to recover. Eyerman v. Ceme-
tery, 61 Mo. 489; Marsh v. Richards, 29 Mo. 99; St. Louis v.
McDonald, 10 Mo. 609; Fox v. Car Co., 16 Mo. App. 122;
Fletcher v. Milburn, 35 Mo. App. 321; Craycroft v. Walker,
26 Mo. App. 469; Billups v. Daggs, 38 Mo. App. 367; Free-
man v. Aylor, 62 Mo. App. 613; Crapson v. Wallace Bros., 71
Mo. App. 682. ·(2) And the fact that defendant refused to·
accept the onions, on the ground that they were not up to the
standard set by the contract, did not relieve plaintiff from show-
ing a strict performance of the contract on his part. Sheffield
v. Balmer, 1 Mo. App. 176; Gas Co. v. St. Louis, 12 Mo. App.
573; Monks v. Miller, 13 Mo. App. 363; Hayden v. Grillo, 26
Mo. App. 289; Craycroft v. Walker, 26 Mo. App. 469; Denny
v. Kile, 16 Mo. 450. (3) The court below erred in giving
the instructions asked by plaintiff; it ignores the jury
and assumes the existence of facts which were not proved
by the testimony. 2 Thomp. Trials, p. 1680, sec. 2324; Wat-
son v. Musick, 2 Mo. 29; Linville v. Welch, 29 Mo. 203;
Fugit v. Nixon, 44 Mo. 295; Zwisler v. Storts, 30 Mo. App.
164. (4) The court erred in refusing to allow defendant to·
show what constituted fancy onions in any other place except
Painesville, Ohio. The onions were never delivered there,.
as the contract required, and defendant was precluded from
showing what was a fancy onion even at Perry, from where·

the onions were shipped. (5) The plaintiff has failed to bring himself within the rule laid down by this court in the exhaustive opinion by Judge SMITH in the case of Smith v. Coal Co., 36 Mo. App. 567; Anderson v. Frank, 45 Mo. App. 485; Tiedeman on Sales, sec. 334.

*Harkless, O'Grady & Crysler* for respondents.

(1) The testimony showed that the contract was performed precisely and substantially as both parties understood and agreed it should be. (2) "It is now a well-settled law in this State that trial courts in civil cases are not required to instruct, unless requested to do so." Molan v. Johns, 126 Mo. 166. (3) Appellant charges that the court erred in refusing to allow defendant to show what constituted fancy onions in any other place except Painesville, Ohio. We answer this by saying, that we understood the rule to be that the party who testifies must know something about the condition upon which he gives an opinion at the place where the onions were to be supplied and delivered. (4) Counsel says that plaintiffs have failed to bring themselves within the rule laid down in the case of Smith v. Coal Co., 36 Mo. App. 567. We can not see what application any proposition involved in that case has to the one under consideration. (5) Counsel seems to make some point that the onions came from Perry, a little station five miles from Painesville, instead of directly from the town of Painesville. The evidence shows that this was a part of the buying community of plaintiff at Painesville. How could they possibly be hurt by the question as to whether or not they were loaded at Perry or Painesville? Did defendant expect that the onions were to be raised on "Pingree patches" in the corporate limits of Painesville. Stresovich v. Kesting, 63 Mo. App. 57.

BROADDUS, J.—The plaintiffs for their cause of action allege that on or about the ninth of February, 1898, they and defendant entered into a contract whereby they sold to defendant four carloads of onions, for the price of $2.10 per barrel, to be delivered by them on board cars at Painesville, Ohio; that they delivered at said place two carloads of the onions, as per agreement, containing four hundred barrels, which were by defendant's directions forwarded to him at Kansas City, Mo.; that the defendant refused to accept them and so notified plaintiffs and that he would not accept the other two carloads at that time not shipped; that they tendered and offered to defendant all of said onions but he refused to accept any part of them; that the value of said two carloads so shipped was $840; that after the refusal of defendant to accept the onions shipped to him and his refusal to accept the others also, plaintiffs did not ship any more of them to the defendant; that by reason of the failure of defendant to receive the two carloads shipped as aforesaid plaintiffs were obliged to and did sell them on the market at Kansas City, Missouri, for the sum of $567.40; that after deducting commission, freight and other charges aggregating the sum of $339.44, they realized the net sum of $227.96, which they applied to defendant's credit, and which left the defendant indebted to them in the sum of $612.04, which amount they claim as damages for failure of defendant to comply with his contract.

Defendant in his answer states that on January 22, 1898, he entered into a contract with plaintiffs whereby he bought of them two cars of "Fancy Globe onions, f. o. b.," at Painesville, Ohio, to be delivered and billed to defendant, one car about February 1, 1898, and the other about February 8, 1898, at the price of $2.10 per barrel, and that plaintiffs failed to comply with their part of the contract, although the defendant was ready and willing and offered to comply on his part. The

cause was tried before a jury on the seventeenth day of April, 1900, and a verdict was rendered for the plaintiffs in the sum of $612.01, from which the defendant appealed.

The contract between the parties, as shown by the evidence, was about as stated by the plaintiffs, except that the onions were to be as stated by defendant in his answer "Fancy Globe, f. o. b." The contract was made by telegrams and letters which were given in evidence, and the delivery was to be on the cars at Painesville, Ohio. However, it appears that during the correspondence, defendant directed plaintiffs to ship to him at Kansas City, Missouri, which they did. Shortly after the arrival of the first car, defendant notified plaintiffs not to ship further and to cancel the order; at this time the second car was in transit. The defendant claimed that the onions were not according to the contract. Upon this issue the evidence was conflicting. As the defendant would not receive the two cars shipped to him, the plaintiffs placed them in the hands of Evans & Holinger, commission merchants at Kansas City, Missouri, who disposed of them and turned the net proceeds over to the plaintiffs. It was shown at the trial that the onions were loaded and shipped at Painesville, Ohio, but at Perry, the next station east of Painesville.

One of the issues before the jury was as to the quality of the onions; in other words, were they "Fancy Globe." The court ruled that this was to be determined by what the onions would be considered at Painesville, as that was the place of delivery. W. L. Baker, one of the plaintiffs, was allowed to testify, against the objection of the defendant, how the onions would be classified at Painesville, Ohio. It is claimed that as they were shipped at Perry, a station five miles east of Painesville, the court committed error in admitting said testimony. This objection is purely technical, *if anything*. What difference could it make to the defendant whether they were shipped

from one point or the other, except as to the question of difference in freight, if any, for the longer distance? And that matter could have been adjusted by instruction if desired. But the defendant did not object to receiving the shipment on that ground, but on account of their quality. Painesville was the place where the onions were to be delivered and their character was to be determined by the market grades at that point; and besides, it is not disputed that this would be the rule if the onions had actually been loaded and shipped from there.

The evidence of William Edwin, admitted by the court over the objection of the defendant on the ground that he was not a competent witness as to the matters he was testifying about, is assigned as error. His evidence is to the effect that he had lived at Perry thirteen years ago and that he had been in the onion business for twenty years there and at Painesville, but was now in the real estate business at Kansas City; that he saw the onions in question, and thought from his former experience he still knew what an onion was, and pronounced them No. 1—fancy onions. Notwithstanding the court had confined the evidence of the plaintiffs in chief as to what would be a fancy onion, to Painesville, Ohio, after the defendant had shown by witness Coombs that a fancy onion in Ohio would be a fancy onion in Kansas City, the rule was relaxed and the evidence took a wider range. And we can see no good reason why under such conditions the evidence of witness Edwin should have been excluded.

At the time the court refused to allow defendant to prove by witness Haines to what class the onions belonged at places other than at Painesville, it had not been shown that they were classed the same everywhere and the defendant should have renewed his offer; but he did not do so, and he is not now in a condition to complain. These are all the objections taken to the admission and the rejection of evidence that are deemed material.

The defendant claims that under the evidence it is shown that plaintiff did not comply with his contract and his instruction number two should have been given by the court. In effect, this instruction was a demurrer to plaintiffs' case. It is meant by this, that because the onions were shipped at Perry, a station five miles east of Painesville, there was not a substantial compliance with the contract. The instruction should have been refused. It was not an *essential particular* that they should be shipped from Painesville. If the defendant had offered to receive them there and plaintiff had failed and refused to deliver them, it might have been essential; but defendant directed plaintiffs to forward to him at Kansas City, and his ground for refusal to accept them was not for the reason that plaintiffs had not delivered them at the place designated in the contract, but because they were not such as he had contracted for. His order to plaintiff to forward to Kansas City, was an order for delivering them and a modification of the terms of the original contract to that extent.

In our opinion, the only question before the court was: Were the onions shipped and delivered of the character provided for in the contract? And this issue was placed before the jury by plaintiffs' and defendants' instructions; and plaintiffs' instruction is not subject to the objections that therein the court assumes as true, controverted facts. There was but one controverted fact in the case and that was whether the onions delivered were of the character provided for in the contract.

It is contended that if plaintiffs delivered the goods as agreed upon they had no right to interfere with them afterwards, and in support of this theory we have been cited to the case of Smith v. Keith & Perry Coal Co., 36 Mo. App. 567. In our opinion, that case does not sustain appellant's position. The court there held that the plaintiff who had a contract to deliver a quantity of hay to the defendants, upon a failure to

accept part that was offered to them on the ground that the quality was inferior to that provided by the contract, took it to another buyer in the town and sold it, could recover on his said contract. The principle is the same here.

There appears to be no error in the record. Affirmed. All concur.