## THE AULTMAN & TAYLOR COMPANY, Appellant, v. E. H. and SARAH SHELTON.

**Warranty in Sale of Machine:** MEASURE OF DAMAGES ON BREACH. Where it is agreed that known defects in a machine shall be remedied to correspond to a warranty, and it is not done nor shown that it could be done, the damage is the difference between the actual value of the machine when sold and its value as warranted. (6)

DEFENSE TO BREACH. It is no defense that warrantee could have remedied the defects had he known how. (7)

SAME. Knowledge of the defects and failure to object to them, are not defenses to the breach of a warranty to remedy such defects. (4)

**Oral Warranty, What is.**   Where the oral agreement is that a warranty shall be the same as contained in a certain written contract, said oral agreement is an oral warranty.   (5)

**Substitution of Warranty.**   Where a partnership is limited to running a threshing machine, bought by the members as individuals, a warranty taken by one of them after the purchase, differing from one given at the time of the purchase, does not bind the other members.   (4)

**Attorney Fee in Chattel Mortgage.**   If a provision in a chattel mortgage that mortgagor will pay for an attorney's services, "in removal and sale" of the mortgaged property be binding at all, such services are not measured by the attorney fee statute, but by their reasonable value.   (9)

**"Negotiable Without Offset," Construed.**   The words, "negotiable without offset," do not prohibit offsets against the original payee. (2)

**Practice: Permitting Amendments.**   It is not error to permit amendments to pleadings, during trial, if an opportunity be given the other party to apply for a continuance, and it be not done.   (1)

SAME: INTERROGATORIES.   It is not error to refuse interrogatories which do not call for ultimate facts, and which would simply tend to confuse the jury.   (8)

SAME: ON APPEAL.   A motion to strike and to tax costs of an amendment to abstract for being filed late will be denied where the amendment was justified by appellant's abstract, and where the delay is not prejudicial.   (10)

*Appeal from Clay District Court.*—HON. LOT THOMAS, Judge.

SATURDAY, FEBRUARY 3, 1894.

THIS action is upon two promissory notes, aggregating one thousand, three hundred and fifty-five dollars, upon which there is a conceded credit of six hundred and seventy-three dollars and fifty-three cents. The answer disputes the correctness of two of the items of credit given, and claims additional credits, as to which issue is taken. The consideration for the notes in suit was a threshing machine outfit, consisting of a separator and steam engine. The answer, by way of counterclaim, avers a warranty of the outfit and a breach

thereof, and asks damages in the sum of six hundred dollars. Upon issue formed, the cause was tried to a jury, that returned a general verdict for the defendants. The record presents numerous questions for consideration, and the particular facts as to each will be better understood if presented in connection with its consideration. The plaintiff appeals.—*Affirmed.*

*Cory & Bemis* for appellant.

*Parker & Richardson* for appellees.

GRANGER, C. J.—I. This cause was placed on the docket of the district court in April, 1889, and came on for trial on the fifteenth of February, 1892. On the day following, the court permitted the defendants to file a substituted answer for one count of the answer, filed February 15, 1892, which, it appears, was also a substituted answer. Complaint is made of the action of the court in permitting it to be filed. The answer thus filed pleaded additional payments in the sum of five hundred and forty-five dollars. The court, in permitting it to be filed, gave to plaintiff an opportunity to make a showing for a continuance if taken by surprise by the filing of the pleading. We assume that upon a showing that made it doubtful, even, whether plaintiff was able to properly proceed to trial, a continuance would have been granted. No showing was made or attempted, and it is fair to assume that no reasons existed for a continuance. The matter was clearly within the court's discretion.

II. The following is a copy of one of the notes in suit: "On or before the first day of December, 1887, for value received, we, or either of us, of Spencer post office, county of Clay, state of Iowa, promise to pay to the Aultman & Taylor Company, or order, seven hundred dollars, and negotiable without offset at Clay County Bank, of Spencer, Iowa, with interest at eight

per cent. per annum from date until paid." It is contended that the words in the note, "and negotiable without offset," is a contract to pay without offset, and that all evidence to support one was improperly admitted. We do not think that the note has such a legal significance. The provision has not reference to the original parties to the note, but to parties to whom it may be negotiated. The provision only purports to fix terms of negotiation.

III. On the third day of the trial the plaintiff asked leave to amend the sixth count of its reply by alleging that on December 31, A. D. 1886, the defendants had full and complete knowledge of the condition of the separator in question, and that during the year 1887 they used and operated it, and at no time, either before or after December 31, A. D. 1886, offered to return said machine, and on December 31, A. D. 1886, the defendants had full knowledge of said machine's condition and defects, and with that knowledge received and operated the same all of 1887 without objections, which the court refused. The proposed amendment purports to set out only defensive matter to that pleaded in a counterclaim. It was not a count of the reply by itself, but was pleaded in connection with other matters. The facts stated in the amendment, if true, did not avoid, nor were they a defense to, the counterclaim pleaded. It seems to us that the court wisely exercised its discretion in not permitting it to go upon the files.

IV. The district court presented to the jury the issues on defendant's counterclaim, as follows: "It further appears, without controversy, that in June or July, 1886, the defendant E. H. Shelton and one Tenaure purchased from the plaintiff a threshing machine outfit, consisting of a separator and steam engine, for which they executed and delivered to the plaintiff their promissory notes, and that, upon said purchase by said parties, the plaintiff gave to said purchasers a warranty

containing, among other things, the following stipula-
tions and agreements: 'That with good management
said machine was capable of doing a good business in
threshing and cleaning grain, and is superior to any
endless-apron thresher manufactured in the United
States, in its adaptation for separating and saving from
the straw the various kinds and conditions of grain
and seeds, with less waste, less littering, and less deten-
tion from wet or bad condition of straw or bad weather,
conditioned that, upon starting the machine, the pur-
chasers should intelligently follow the printed hints,
rules and directions of the manufacturer; and, if, by so
doing, they are unable to make it operate well, writ-
ten notice, stating wherein it fails to satisfy the war-
ranty, is to be given by the purchasers to the dealers
through whom purchased, and also to the Aultman &
Taylor Company, Mansfield, Ohio, by registered letter,
and reasonable time allowed to get to and remedy the
defect.'

" 'It further appears, without controversy, that
afterward, and about December 31, 1886, said Tenaure
transferred his interest in said machine and engine to
the defendant, O. P. Barber, and that at that time,
under a mutual agreement between the plaintiff, Ten-
aure, and the defendants, Barber and Shelton, the
original notes given on the original purchase of the
machine by Shelton and Tenaure were taken up, and
Tenaure was released from all obligation on said notes,
and transferred his interest in the threshing machine
and engine to the defendant Barber; and, instead of
the former notes, the notes in suit were executed and
delivered to the plaintiff by the defendants, Shelton
and Barber. It further appears from the evidence,
without controversy, that after the original purchase of
said machine by Shelton and Tenaure they took pos-
session of the same, and proceeded to use the same
during the threshing season of 1886; but these defend-

ants claim that said machine was not a good machine, or not equal to or superior to any endless-apron machine; that it would not separate well, or properly separate, the grain from the straw, as warranted, and would not clean the grain properly; and that said machine was poorly constructed; and that said thresher, in said condition, was of the actual value of not to exceed one hundred dollars, and that, if it had been as warranted, it would have been of the actual value of six hundred dollars. These defendants further say that subsequently, and at the time the notes in suit were executed, the defendant, Barber, was desirous of buying out the interest of said Tenaure in and to said property, and that the plaintiff and the defendants Shelton and Barber, entered into an oral agreement wherein the plaintiff was to still warrant said machine as to quality, character, and construction, the same as the written warranty hereinbefore set out; and that the said plaintiff orally promised and agreed that if the defendants would keep the machine, and execute the notes in suit, the plaintiff would, before the next threshing season, or during the threshing season, repair said machine, and make it operate and come up to the terms of said warranty without any further notice or trouble; and that thereupon the defendants and the said Barber executed and delivered to plaintiff the notes sued upon. The defendants further say that said machine remained in said condition until the next threshing season, and that the plaintiff wholly neglected and refused to repair the same, and wholly neglected and refused to make the machine come up to the terms of the said warranty in respect to the terms hereinbefore stated, but that said machine still continued to work as it had previously done, and was still defective in all respects, as hereinbefore set forth; and that said machine was not worth to exceed the sum of one hundred dollars, and that it would have been worth

six hundred dollars if it had been as warranted. These defendants therefore say that they have been damaged in the sum of six hundred dollars, which amount, they say, should be offset against the notes sued upon. On the other hand, it is the contention of the plaintiff that at the time of the execution of the notes in controversy by the defendants, Shelton and Barber, in December, 1886, it was not agreed that the old warranty should be continued in force, or that the machine should be made to fulfill the terms of the old warranty, but that at the time, and as a part of the consideration for the new notes, the plaintiff executed and delivered to the defendants, Barber and Shelton, a written warranty, in the following language:

" 'Whereas O. P. Barber and E. H. Shelton have this day executed to the Aultman & Taylor Company their three notes, in aggregate one thousand, six hundred and fifty-five dollars; and whereas, said parties claim said machine does not work or operate properly: Now, it is agreed, if said party pay said indebtedness promptly, said company are to make the machine work satisfactorily, and during fall of 1887, if said parties wire and give said company written notice three weeks prior to date of threshing, then said company to have an expert on hand to assist in operating said machine; if said debtors are at fault in operating the same, the expenses of said expert to be paid by said debtors.

" 'THE AULTMAN & TAYLOR COMPANY.'

"And the plaintiff says that the defendants have failed to pay and settle said notes sued on, and have failed to give the plaintiff written notice of the failure of the said machine to operate properly, three weeks prior to the date of beginning threshing during the fall of 1887; that the defendants used said threshing rig all the year of 1887 without objection, and in no manner notified the plaintiff, either orally or in writing, that it did not give satisfaction." The jury specially

found that the written warranty claimed by plaintiff as having been made to Shelton & Barber was not made and delivered. This finding was under the issue formed as to whether Shelton & Barber took the machine under the written warranty, or an oral one keeping in force the original one with certain modifications.

It is true that at some time the written warranty claimed by plaintiff was delivered to Barber, who was a member of the firm. The court, under proper instructions, directed the jury to find whether or not such delivery was to the firm. The rule adopted by the court was that, if it was made the contract when the notes were given, or was afterward delivered to Barber by virtue of an understanding at the time the notes were made, it became the contract, but that if, after the contract was completed by an oral agreement to retain the former warranty modified, and the warranty claimed by plaintiff was afterward delivered to Barber without the assent of Shelton, it was not the contract of the parties. Nothing in the partnership relation of Shelton & Barber authorized one partner to make such a change in the contract of purchase and bind the other. There is nothing in the transaction to bring it within the rule stated in Parsons on Partnership [2 Ed.], section 103 or 219. The signatures to the note do not appear in the record, but we understand that the giving of the notes was not as a partnership, but that each maker signed in his individual capacity. The partnership transactions were merely as to the running of the machine. Our conclusion on this branch of the case will render it unnecessary to consider many questions as to the introduction of evidence, because they are based on the theory of the written warranty being the contract of the parties.

V. The warranty relied on by defendants is, with certain exceptions, one made in writing between plain-

tiff and Shelton & Tenaure when the outfit was purchased. By the change in the transaction, by which
Tenaure was dropped from the firm, and another formed
with Barber as a member, the written warranty became inoperative, and the first notes were surrendered.
Defendants now aver that, by an oral agreement, the
terms of that written warranty, with certain exceptions,
became the contract of warranty as to Shelton & Barber, and the averments of the counterclaim are upon
the warranty as an oral one. Appellant urges that if,
with the exceptions specified, the terms of the written
warranty were continued, the contract of warranty was
in writing, and no recovery can be had on averments
of an oral warranty. Legally speaking, the contract
upon which defendants rely is an oral one. They made
no written contract of warranty. They agreed upon
the terms expressed in a writing as the terms of their
oral agreement. There was no agreement to accept
the instrument as their contract, but a mere adoption
of its terms. The language of the averment is that "E.
H. Shelton and Barber made an oral agreement by
which plaintiff was to still warrant the machine as contained in the above written warranty, except," etc.;
that is, the terms as expressed in the written warranty
were to become the terms as between the new parties.
As was said in evidence: "They would make it come
up to the warranty;" referring to the warranty previously made. The evidence supports the finding by the
jury that the oral contract was made as alleged.

VI. The court gave the general rule as to measure
of damage on a breach of warranty in the sale of personal property,—that it was the difference between the
actual value of the article when sold and its value as
warranted. It is urged that the case is an exception to
the rule, and that the rule to be applied is the cost of
making the necessary repairs to the separator. We
think not. Under the sale to Shelton & Barber, plain-

tiff undertook specifically to make good known defects in the machine,—to make it come up to the warranty. This it failed to do, and the failure constitutes a breach of its warranty. It does not appear that it could be made to conform to the warranty. The conclusion is, rather, that it could not be. The rule of damage given by the court is the proper one.

VII. Plaintiff attempted to show that the defects in the machine could have been remedied by defendants if they had known how, and the evidence was excluded, and we think properly so. As has been said, the machine was sold to Shelton & Barber with the understanding that it was defective, and the defects were to be remedied by plaintiff. The fact is not only shown by the oral evidence, but it appears from the written warranty that plaintiff seeks to establish as the contract that the defects then existed, and were the subject of the contract. With the contract as found by the jury, it was entirely immaterial whether or not the defects could have been remedied by defendants had they known how.

VIII. Appellant asked the court to submit some thirty-eight interrogatories to the jury, which the court refused, and the action of the court is assigned as error. The questions can not be set out. They are not questions calling for findings of ultimate facts or conclusions, or, in other words, facts determinative of the case, but are of particular or minor facts in the chain of evidence from which ultimate facts are to be found. Many of the facts to be disclosed by the answers are not in dispute in the case. Others are in dispute, but the answers would be quite unimportant, as affecting the general verdict. The effect of the questions, as a whole, would have been rather to confuse the jury than to aid it to a correct result. The court submitted six questions presented by the plaintiff, which, we think, covered the material and necessary points for special

findings. See, upon this point, *Thomas v. Schee*, 80 Iowa, 237, 49 N. W. Rep. 539; *Winter v. Railway Co.*, 80 Iowa, 443, 45 N. W. Rep. 737; *Hawley v. Railway Co.*, 71 Iowa, 717, 29 N. W. Rep. 787.

IX. By reference to the statement of the case it will be seen that there is a dispute as to two items of credit, making up the aggregate of six hundred and seventy-three dollars and fifty-three cents. The two items of credit as to which there is dispute pertain to the sale of property under a foreclosure of a chattel mortgage given by Shelton & Barber to secure the notes in suit. Plaintiff claims to have paid, as an item of expense in such foreclosure, which was by notice and sale, the sum of thirty-three dollars as attorney's fees, and that amount is not included in the credit. The court, in its instructions, directed the jury to increase the credit to the extent of the attorney's fees, thus holding that defendant's were not liable for it. The plaintiff offered to prove that it "incurred and paid as expenses of said foreclosure, the sum of thirty-three dollars to Snow Brothers on the fourth day of August, 1888, and the same was incurred under the provisions of said mortgage." The provision of the mortgage relied upon is that the mortgagor will pay "all charges, costs, and expenses of such removal and sale, and also all charges of agents and attorneys for service in such removal and sale." There is no proof in the case as to the value of the services rendered. The provisions of the Code, in so far as they limit the amount to be allowed as attorney's fees, seem to apply to actions pending in court, and not to foreclosures of mortgages upon notice and sale. It will be observed that the offer of proofs by plaintiffs does not include the reasonable value of legal services rendered, but what was "incurred and paid" by him. This offer is upon the theory that plaintiff was entitled to what he had paid as such expense. Certainly, the contract can

not be construed as an obligation to pay more than the services were reasonably worth. It would be an unwarranted construction to hold that the mortgagors were bound for whatever sum should be paid by the mortgagee, whether reasonable or not. Without determining the question of whether or not, under such a contract, an attorney's fee can be recovered, we are clear that the offer of proofs was properly refused, and that, under the condition of the record, the item of the attorney's fee was properly excluded.

X. Appellee filed additional abstracts after the time prescribed by the rules, and appellant moves to strike them from the files. It does not appear that the delay in filing has caused any delay in the submission of the cause, nor any prejudice to appellant. In the main, they were justified by the condition of appellant's abstract. The motions to strike and to tax the costs to appellee are overruled. *Scholl v. Bradstreet Co.*, 85 Iowa, 551, 52 N. W. Rep. 500; *Wilson v. Daniels*, 79 Iowa, 132, 44 N. W. Rep. 246; *Thomas v. McDaneld*, 77 Iowa, 126, 41 N. W. Rep. 592.

XI. We have omitted a consideration of some of the assignments argued because they do not involve questions of such importance that rulings thereon would serve as useful precedents. Many questions have been presented as to the admission and exclusion of evidence. They have been examined, and no prejudicial error is found. The case seems to have been fairly tried in the district court, and its judgment is AFFIRMED.