[No. 1369.  Decided June 11, 1894.]

BARNEY QUINN, *Assignee, Respondent*, v. THE PARKE & LACY MACHINERY COMPANY, *Appellant*.

RESCISSION — SUFFICIENCY OF EVIDENCE.

Where a written contract for the conditional sale of certain machinery is made, payments for which are to be made in installments one and five months from date, the fact that on the same day, subsequent to such contract, another agreement is made whereby the seller accepts an order on a third party providing for payment of the machinery within sixty days, out of moneys due from such third party to the purchaser, is not sufficient, in the absence of direct proof of rescission of the contract of conditional sale, to establish that the first contract was thereby abrogated, and the delivery of the chattels an absolute instead of a conditional one. (DUNBAR, C. J., dissents.)

*Appeal from Superior Court, Spokane County.*

*Fenton & Henley*, for appellant.
*W. M. Ridpath*, and *Feighan, Wells & Herman*, for respondent.

The opinion of the court was delivered by

STILES, J.—The complaint alleged that plaintiff was the owner of certain machinery which the defendant had

wrongfully taken from his possession, and prayed the return of the property or its value and damages for its detention. The answer opened with the general denial, and continued by stating as an affirmative defense that the machinery had been delivered to a firm, Humphrey & Hamilton, June 30, 1890, under a conditional sale agreement in the form of a lease, under the terms of which, upon the happening of certain contingencies, the seller was authorized to retake it, forfeiting all payments. The contract will be found in the report of this case upon the former appeal. *Quinn v. Parke & Lacy Machinery Co.*, 5 Wash. 276 (31 Pac. 866.) It was further alleged that the contingencies mentioned had happened and that the defendant had thereupon, and in accordance with its right under the contract, retaken the possession. The agreement was set out in full in the pleading.

The plaintiff replied by a general denial of each and every allegation contained in the answer; but forthwith also set up a rescission and abrogation of the contract set out in the answer by a subsequent agreement made on the same day. Other allegations of the reply showed a new agreement, also upon June 30, for a present absolute sale, with payment to be made in a specified way, which payment was made as agreed. The execution of the conditional sale contract being admitted by the reply, the issues in the case were very simple. The preliminary question as to the right of plaintiff to the possession of the property, as assignee of Hamilton, being disposed of, the vital question was whether or not the conditional sale contract had been rescinded and abrogated, as plaintiff claimed, and whether the machinery was delivered under a subsequent independent arrangement amounting to an ordinary sale of chattels without conditions.

When a formal written contract is entered into between two parties, covering the points of their agreement about

a transaction, and it is immediately followed by acts entirely consistent with the terms of the writing, and the writing is permitted to remain intact in the hands of the party to whom it was delivered at the time of its execution, it ought to require very clear and convincing proof to show that in fact the written contract was laid aside and upon the same day a new oral contract about the same subject matter was entered into and executed. And the rules of law are exactly in accordance with this proposition, for while it is not denied by the authorities that the most solemn executory written agreement may be rescinded by a subsequent unwritten one, it is as well settled that nothing short of clear, positive and convincing proof will suffice to establish the fact of such rescission against a party who denies it and seeks to sustain the integrity of the writing. Waterman, Spec. Per., § 386; *Falls v. Carpenter*, 1 Dev. & B. Eq. 237 (28 Am. Dec. 595); *Lauer v. Lee*, 42 Pa. St. 165; *Chouteau v. Jupiter Iron Works*, 83 Mo. 73; *Dick v. Ireland*, 130 Pa. St. 299 (18 Atl. 735).

Now in this case not one word was said by Hamilton (the only witness for plaintiff on the point that the machinery was sold outright), to the effect that any rescission was ever agreed upon or even suggested. He testified that after negotiating with Hendrie, appellant's agent, "he drew up a document and it was in the form of a lease, and he told us if this man Fabyan, who was agent of the St. Paul and Tacoma Lumber Company, would sign with us we could have the machinery." They brought Fabyan in and procured him to accept an order drawn by Humphrey & Hamilton on the St. Paul & Tacoma Lumber Company in these words:

"Please pay to Parke & Lacy Machinery Company one-half of the amount of our lumber bill against you, as it is delivered, and as the payments are made or to be made by

you to us as per agreement, said payments by you not to amount to over the sum of fifteen hundred dollars, and the time of said payments to be within the term of sixty days.''

The witness had no definite idea of the transaction, for he insisted that the contract of sale was in writing and that the foregoing order was the written contract.    He further stated that the delivery of the machinery was under this contract only.    The price of the machinery was $1,447, of which $747 was due July 30, and $700 with interest December 1, 1890.    This was the substance of all that the witness testified.    The theory of the plaintiff was that because the order was for $1,500, due within sixty days, this transaction was inconsistent with the terms of the conditional sale contract which called for only $1,447 at thirty days and five months.    But it was clearly developed that the basis of the order was a contract for lumber which Humphrey & Hamilton had with the St. Paul & Tacoma Lumber Company, under which the former might furnish more or less lumber, and might earn more or less than the sum ordered paid.    The order was not accepted as payment, and it turned out that no more than $1,000 was realized from it, because no more than that was earned, and by the time this amount was realized the firm had incurred a debt on open account to the appellant in the sum of $333.90, which Humphrey directed to be paid out of the $1,000, leaving but $666.10 to be applied on the machinery — less than the first payment, and not received until several months after it was due.    Of course the appellant was at liberty to take such an order without thereby giving up the conditional feature of its contract, for there was no inconsistency in that, and the court so charged.

But with this matter of the order out of the case, there was nothing whatever to sustain the allegations of the reply concerning a rescission and new contract, but the as-

sertion of Hamilton that the machinery was not delivered under the written agreement, and that was not evidence of anything. The contract had been executed and delivered, and delivery of the machinery was an act contemplated by it and not inconsistent with it. No agreement to rescind was shown, and no other contract of sale was proven to have been agreed upon; therefore, the presumption remained that the delivery occurred as provided for in the writing. A point is made that Hamilton's testimony was to the effect that there was a refusal on the part of appellant's agent to deliver the machinery notwithstanding the contract, unless Fabyan would sign it with Humphrey & Hamilton. But the words quoted above (and they contain all that was testified) do not bear such an interpretation, for they do not show a refusal, but a willingness, and the phrase "sign with us" must have referred only to some kind of security which Fabyan furnished by accepting the order.

The proof as to payment fell short of the price by several hundred dollars, even conceding that the full amount received upon the order ought to have been credited upon the contract. If the assignee paid anything to appellant which was intended to apply upon the purchase price of the machinery, it could only have been upon the theory that appellant had some sort of a lien upon it, for if the indebtedness of Hamilton to appellant, shown by his inventory, was general merely, his assignee would have no authority to pay out money to a creditor except by way of dividend under order of the court.

The court refused the following charge:

"Before the plaintiff can show that the firm of Humphrey & Hamilton entered into an agreement subsequent to the lease offered in evidence, you must find from the evidence to your satisfaction that the parties to this lease rescinded or abrogated it."

This was a proper charge, and it might have been made much stronger. *Chouteau v. Jupiter Iron Works*, 83 Mo. 78.

We have had occasion several times to review cases where parties had entered into the most formal contracts, as here; but when it came to performance one party sought, by his sole testimony, to show some new and material agreement, apparently relying upon the chances he might have with a jury, which is often compelled to balance purely contradictory statements of witnesses and decide according to a mere preponderance. But in the face of an acknowledged contract it would not be fair or safe that the mere unsupported statement of a party should prevail and establish a rescission. If it were otherwise there could be no reliance in writings at all. Every one who has made a contract in writing has it in his own hands, if there is a mutual abandonment of it, to cause its destruction as far as he is concerned, and if he omits such a common sense precaution he must bear the burden of making out a clear and convincing case of actual rescission by reasonable corroborative proof when he seeks to avoid what his own hand has written.

Judgment reversed, and cause remanded for another trial.

SCOTT, ANDERS and HOYT, JJ., concur.

DUNBAR, C. J. (*dissenting*). — I think there was sufficient testimony to warrant the jury in finding that the machinery was delivered under the new contract, and I therefore dissent.