[No. 5030.   Decided July 13, 1904.]

FRED A. COOKE, *Appellant*, v. JOHN CAIN *et al., Respondents.*[1]

PLEADINGS—AMENDMENT—MISTAKE IN ANSWER—NECESSITY OF AFFIDAVITS AND NOTICE—SURPRISE.  Where, after sustaining demurrers to defendants' affirmative defenses, an action based upon a written contract went to trial upon issues raised by general denials, it was not error to permit the defendants to file a trial amendment setting up affirmatively an oral rescission of the contract and the substitution of an oral agreement providing a different consideration which was paid in full, without requiring an affidavit and notice to the plaintiff under Bal. Code, §4953, where it appeared by sworn statements of the defendants as witnesses that a mistake was made in the first attempt to draw the answer, and the plaintiff had early notice at the trial of the defendants' claim and defense, and no continuance was asked and no claim made that the plaintiff was surprised.

APPEAL—REVIEW—EVIDENCE ON TRIAL DE NOVO.  The erroneous admission of testimony is not ground for a reversal where on appeal there is a trial *de novo*.

EVIDENCE—WRITTEN CONTRACT—ORAL RESCISSION—UNCORROBORATED TESTIMONY OF A PARTY—FINDINGS ON CONFLICTING EVIDENCE.  It seems that the uncorroborated testimony of a party may establish that a written contract was orally rescinded, the only requirement being that the testimony be "clear, cogent and convincing," and a finding of a rescission based wholly on oral evidence will not be disturbed upon conflicting testimony, where a corroborating circumstance supports the finding and the trial court had the demeanor of the witnesses for a guide.

Appeal from a judgment of the superior court for Clallam county, Hatch, J., entered July 27, 1903, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action for an accounting and a balance due for commissions.   Affirmed.

[1]Reported in 77 Pac. 682.

*Trumbull & Trumbull,* for appellant.

*William Ritchie* and *G. M. Emory,* for respondents.

HADLEY, J.—Appellant brought this action against respondents and alleged, that, at the times mentioned, the latter composed a copartnership, doing business as dealers in real estate, under the firm name of Cain Investment Company, with their principal place of business in the city of Port Angeles, Washington; that on the 23d day of January, 1900, and for many years prior thereto, appellant was a resident of the city of Boston, Massachusetts; that on said date respondent Cain was in said city of Boston, representing said firm in the business of selling real estate situate in the city of Port Angeles and vicinity, and was endeavoring to effect sales in Boston; that on said date appellant entered into a written agreement with said firm, the essential part of the memorandum of which is as follows:

"Port Angeles, Wash., January 23rd, 1900.
"Memorandum of Agreement by and between John Cain of Port Angeles, Washington, and Dr. Fred A. Cooke, of Boston, Mass. It is agreed between the parties hereto that John Cain will pay to Dr. Fred A. Cooke fifty per cent of all profits and commissions of such sales of Port Angeles real estate as said Dr. Cooke is instrumental in bringing about or assists said Cain in consummating.
"John Cain."

The complaint then enumerates numerous sales alleged to have been effected through the assistance of appellant, stating the amounts for which the respective lots and parcels were sold. It is also alleged that the respondents represented certain amounts as the cost prices at Port Angeles and vicinity of the various lots and tracts, which amounts are set forth in the complaint, and that appellant has been paid one-half the difference between

the said several amounts and the selling prices of the respective tracts. It is further averred that respondents falsely represented to appellant the actual cost of said real estate; that in each instance such actual cost was less than the represented amount, and that such false representations were made for the purpose of defrauding appellant out of his just share of the profits arising from the sales under said contract. It is averred that, prior to the making of said sales, appellant had never been in Port Angeles or the state of Washington, and knew nothing of real estate values in said city and vicinity, except as stated to him by respondents; that all of said sales were made prior to the 1st day of February, 1901, and that appellant did not discover the false representations as to the cost of said property until after he came to Port Angeles in October, 1901; that about July 1, 1902, he demanded of respondents an accounting of the profits and commissions actually arising from said sales, but that they have refused and neglected to so account. The complaint concludes with a prayer for an accounting to determine the amount due appellant under said contract, and that he be given judgment against respondents for the amount so found to be due.

The respondents first answered the complaint separately, each denying all allegations of the complaint, and respondent Cain further answered affirmatively that, on or about said 23d day of January, 1900, at Boston, he entered into an agreement with appellant, whereby he agreed to pay him fifty per cent of all net profits upon sales of real estate situate within the city of Port Angeles which appellant might assist in consummating. A list of lands and lots sold, located within the city of Port Angeles, is then set out, together with the alleged cost

thereof to said Cain, the selling price, and the amount of the difference, one-half of which it is alleged has been paid to appellant, and accepted by him in full satisfaction of all demands. A further affirmative defense of said Cain's first answer is to the effect that the sales of lands outside of the city of Port Angeles were not included in said contract, and that appellant has been fully paid on account of all sales of outside lands.

Appellant demurred to the said affirmative defenses of respondent Cain's first answer, and the demurrer was sustained. The purpose of mentioning these pleadings will more fully appear hereinafter. Respondents did not further plead affirmatively at that time, and the cause then went to trial before the court without a jury, upon the issues formed by the complaint and the general denials of the separate answers. At the conclusion of the plaintiff's testimony, the court denied a motion for nonsuit, and stated that, as the evidence then stood, the plaintiff was entitled to recover. This occurred on the 16th day of May, 1903, and, by reason of an approaching jury session, the court at this juncture postponed the further trial of the cause until June 5, 1903, at which time the trial was resumed. Before proceeding with the trial, however, respondents on the said day asked and obtained leave to file an amended answer. The permission was granted over the urgent protest of appellant.

The amended answer was jointly made by the respondents, and admitted that respondent Cain did, on or about January 23, 1900, subscribe and deliver the writing set forth in the complaint, but averred, that said memorandum of agreement was never acted upon by any of the parties, and that no sales were made thereunder; that said agreement was, in the month of October, 1900, by the

parties thereto, mutually abandoned; that, subsequent to said abandonment, the respondents entered into an oral agreement with appellant, whereby he agreed to assist them in selling various parcels of real estate in Clallam county, Washington; that it was agreed that the specific parcels of property should be furnished to appellant at certain and definite prices, from which fixed prices appellant's commissions should be ascertained; that it was agreed that appellant should receive as commissions one-half of the difference between the selling prices and the prices specifically agreed upon, at which the parcels of land should be furnished; that the prices agreed upon were, in each instance, the same as those alleged in the complaint to have been represented as the cost prices; that the prices for which the lands sold were the same as the amounts alleged in the complaint as the prices for which they were sold; and that appellant has been fully paid all his share of commissions, under the terms of said agreement. The trial thereafter proceeded under the issues formed by the complaint and amended answer. Respondents introduced evidence to support the new answer, and appellant introduced rebuttal testimony. The court made findings of facts substantially in accord with the amended answer, and concluded that the agreement under the written memorandum was abandoned and rescinded by the alleged subsequent oral agreement, and that all commissions under the new oral agreement had been paid. Judgment was entered dismissing the action, and the plaintiff has appealed.

Appellant assigns as error that the court permitted the amended answer to be filed after the plaintiff had rested his case. This point is urged at great length in the briefs, and counsel manifest much earnestness in the

argument. It is urged that the court had no authority to allow an amendment of this character, without notice to appellant and without a showing by affidavit, and we are referred to § 4953, Bal. Code, in support of this position. Counsel maintain that the proposed amendment could not come within the first part of the section relating to the correction of mistakes, and that an affidavit showing good cause, after notice to the adverse party, became necessary to establish any right to the amendment under the latter part of the section. This section has ordinarily received a very liberal construction. The first part relates not only to amendments with reference to correcting names, but also to "mistake in any other respect," when it may be "in furtherance of justice." During the introduction of testimony on behalf of appellant, both respondents were placed upon the witness stand by appellant, and Mr. Cain testified at that time that the real estate was sold under another and oral agreement, made about nine months after the written memorandum was made. It thus became manifest, at that early stage of the trial, from an examination conducted by appellant's own counsel, that respondents' position was that the written agreement had been rescinded and superseded by another and oral one.

It will be remembered that, in respondent Cain's first affirmative defense, an agreement was pleaded to the effect that the commissions were to be based upon an equal division of "net profits." The court sustained a demurrer to that defense, apparently, from what the record discloses, upon the theory that the agreement named in it was the same as that set out in the complaint, inasmuch as the date laid for it was the same as that alleged in the complaint. It seems to us, however, that the legal

effect of the two is not necessarily the same. That alleged in the complaint is based merely upon "profits," which is susceptible of the construction placed upon it by appellant, viz., that the profits meant should include the difference between the actual cost and selling prices; whereas, the contract alleged in the answer is based upon "net profits," which may be construed to mean what is left, after deducting from the selling price the actual cost price together with all expenses incidental to the procurement of the property in the first instance and to its sale thereafter. It is contended by respondents that their expenses were large, including the expenses of an almost continuous sojourn of Mr. Cain in Boston, for the purpose of effecting sales. They claim that appellant's assistance was rendered chiefly by way of introducing persons to Mr. Cain, but that the conclusive work of making the sales was done by the latter, and such in effect is admitted by appellant. It therefore appears to us that the court may have overlooked the above mentioned difference between the two alleged contracts, in ruling upon the demurrer to the first affirmative answer of Mr. Cain, and may have been misled to the conclusion that the two contracts were the same, by the fact that the same date was laid for both.

We make these observations by way of trying to make it clear that the first verified answer is not, in its legal effect, necessarily inconsistent with the last answer, wherein it is specifically averred that the agreement evidenced by the written memorandum was rescinded by a subsequent oral agreement. That being true, and it having already appeared in the testimony that respondents claimed that such rescission had been made about nine months after the date of the written memorandum,

whereas, the date alleged for it in the pleading was the same as that of the former, it is evident that some mistake existed with reference to the pleading, and we think the court did not err in permitting it to be corrected by amendment. Evidence was afterwards introduced with reference to the inception of the mistake. It is true, this was not before the court at the time of the ruling upon the application for leave to amend, but it serves to emphasize the view that a mistake existed, and that the court did not err in allowing its correction from what already appeared in the record, without affidavit and without notice to appellant. The latter was already advised of respondents' position by what had appeared in the testimony, brought out by his own examination of Mr. Cain.

The testimony concerning the mistake, in its inception, to which we refer, was given by the two respondents, and by two of their counsel, Judge McClinton and Mr. Ritchie, who represented respondents at the beginning of the litigation. Each of these witnesses testified that the respondents, at all times, including their first interview with counsel, stated the facts about the subsequent oral agreement and their claim that all the property was sold under it. Just how the error in date, and the failure to more specifically state the terms of the new contract, occurred, counsel were unable to say, but all agreed that counsel had drawn the answer under some misapprehension, and that a mistake had manifestly been made. Mr. Cain stated that he did not observe the error in the date, and, not knowing the legal effect of the answer, relied upon counsel therefor, and verified the pleading.

In view of the existence of all these circumstances, we think good cause appeared in the record by way of sworn

testimony, which was as forcible as a formal affidavit could have been, and that, under the latter part of § 4953, *supra*, the amendment was authorized, even if we should not take into account the authority to correct a mistake given by the first part of the section. Appellant cites cases to the effect that, at so late a stage in the progress of a cause, amendments will not be permitted which radically change the theory of the former pleadings. From what we have already said, we think the legal effect of the amended pleading was not fundamentally different from the first, in its bearing upon the written contract, and that this case does not come within the rule invoked, particularly since respondents themselves asserted to their counsel, from the beginning, the position stated in the amended answer, and relied upon them for its maintenance by the necessary pleading in the premises. Appellant at no time, not even after all the testimony concerning the mistake was introduced, asked for a continuance on the ground of surprise, and it is not contended that he would, under any circumstances, have been able to produce other testimony than that which was introduced by him. Hard and fast rules concerning amendments in furtherance of justice during the progress of a trial cannot well be established. The trial court must be vested with much discretion, and exercise of that discretion will not be disturbed, unless it appears that the adverse party has been prejudiced and surprised, and makes timely objection for relief on such grounds. The above rule has not only been sustained by this court in repeated decisions, but, among many others which might be cited, we refer to the following in support of the rule: *Aultman & Taylor Co. v. Shelton*, 90 Iowa 288, 57 N. W. 857; *Burns v. Fox*, 113 Ind. 205, 14 N. E. 541; *Osborne & Co.*

*v. Williams,* 37 Minn. 507, 35 N. W. 371; *Hedges v. Roach,* 16 Neb. 673, 21 N. W. 404; *McPherson v. Weston,* 85 Cal. 90, 24 Pac. 733; *Excelsior Mfg. Co. v. Boyle,* 46 Kan. 202, 26 Pac. 408. We have given much space to the discussion of the subject of the amendment for the reason that the attendant circumstances, urged by appellant as the basis of error, could not well be made clear without it, and for the further reason that counsel have so earnestly and extensively pursued that subject, both in the opening and reply briefs.

Errors are assigned upon the rejection and introduction of certain testimony. We do not believe the rejection of testimony became prejudicial, in view of evidence that was admitted, and we think no good purpose will be served by a detailed discussion of it. Referring to testimony which it is claimed was erroneously admitted, it is sufficient to say that this court has often held that, in a trial *de novo,* it will not disturb findings of the trial court merely because immaterial or incompetent testimony may have been admitted, when, in its opinion, there is sufficient competent testimony to support the findings.

It is next vigorously urged that certain of the material findings are not supported by the evidence. Both respondents testified, in support of the facts alleged in the amended answer, to the effect that an oral agreement to rescind the written one was made in October, 1900, that a new oral one was then made, and that the sales were all made under the new agreement. Appellant denied that such new agreement was made. If the testimony of respondents is to be accepted as the truth, then appellant's commissions have been fully paid by the $7,000, and more, already received by him. If, however, appellant's testimony is correct, then he is entitled to recover

about $6,000 more. There seems to be no way of harmonizing the testimony. It is that of two parties upon one side, against one upon the other, and all are vitally interested in the result of the litigation.

Appellant urges that the uncorroborated oral evidence of a party should not be held to be sufficient proof that a written contract has been orally rescinded. We find that a few of the cases practically go so far as to announce such a rule, but the language of most of the opinions is restricted to the statement, in effect, that the oral evidence necessary must be "clear, cogent, and convincing," as against the party who denies it, and who seeks to sustain the writing. In *Quinn v. Parke & Lacy Mach. Co.,* 9 Wash. 136, 37 Pac. 288, this court, in a majority opinion, used somewhat strong language declaratory of the rule contended for by appellant. The application of the rule so broadly stated seems not to have been required in that case, since the opinion states that there was no evidence to sustain the allegations concerning a rescission except the mere assertion of one that the machinery was not delivered under the written agreement, there being actually no testimony, by even a party, that an *agreement* to rescind was made. Appellant also cites the opinion of this court in *Western Loan & Sav. Co. v. Waisman,* 32 Wash. 644, 73 Pac. 703, where we refused to hold that a certificate of acknowledgment had been impeached by the uncorroborated testimony of two mortgagors. We, however, based the decision upon the view that a certificate of acknowledgment is a record of an official act of such dignity and importance that it ought not, for reasons of public security, to be held that it may be overcome by the mere uncorroborated testimony of an interested party.

Were we now confronted with a case with no corroboration whatever to support the testimony of parties, we

should hesitate to say that rescission is not established for
the mere reason alone that such corroboration may be
lacking. It seems to us that the application of an inflexi-
ble rule of that kind might, in some cases, preclude the
doing of what the courts may be firmly convinced should
be done, and that the deciding mind should, in each case,
be free to accept that which is "clear, cogent, and con-
vincing," even though it be the testimony of a party only.
It is none the less true, however, that such testimony
should be scrutinized with great care and caution, and
its convincing force must depend upon the character of
the witnesses and the circumstances of each case. In-
deed, in most of the cases there are probably attending
circumstances which may, of themselves, be either cor-
roborative of the testimony of the party, or may weigh
against it. In the case at bar there is one circumstance
which, to our minds, tends to corroborate respondents.
It is this: Both respondents testify that in October,
1900, about nine months after the date of the written
memorandum, they met the appellant in the Adams hotel
in Boston; that respondent Hartt and appellant had never
met before, and, during the first conversation between
the two in the hotel office, appellant disclosed to Mr. Hartt
that he understood his commissions were to be based upon
an equal division of the difference between actual original
cost prices at Port Angeles and the selling prices in Bos-
ton; that Mr. Hartt had not before known of the written
contract or its terms, it having been made by Mr. Cain;
that Hartt at once, in vigorous language and in a boister-
ous manner, declared he would not abide by such an
arrangement; that Cain, hearing the two, and wishing to
avoid a further scene in the hotel office, got them in the
elevator and took them to his room; that there Cain took

up the conversation, and said to appellant that they could
not work under the agreement he had made with him
in the previous January, for the reason that their ex-
penses were so heavy in procuring property at Port An-
geles, and his own traveling and hotel expenses in Boston,
together with expenses of entertaining customers in order
to effect sales, were so great that they would have to add
a sum to the original cost price in each instance, at least
sufficient to cover these expenses, and put the property
to appellant at definite and agreed prices which he should
accept, and that he should receive one-half the difference
between the prices thus fixed and the selling prices; that
appellant, after some further conversation, agreed to ac-
cept the new proposition, and all three then agreed upon
said terms.   Now, appellant admits the above details of
the first interview between himself and Hartt, and that
Cain, after he got the two to his room, took up the con-
versation; but he says that Cain was endeavoring to con-
vince Hartt that the written agreement was all right.   He
does not say, however, that Hartt ever acquiesced in such
view, and, from the admitted temper of his mind at
that time, it seems extremely improbable that he did so. In
view of the fact that the commissions were earned after
that time, and inasmuch as appellant admits that this
vigorous and seemingly unyielding protest was made by
Hartt before the sales were made, it seems the more
reasonable to us that respondents' version of the result
of that interview is the true one.   We shall therefore not
disturb the findings of the trial court, who had these par-
ties before him, and, in addition to the spoken testimony
and circumstances we have mentioned, had, also, the de-
meanor of the parties for a guide to such impressions
as may be instinctively gathered from the manner of
a witness, and which an appellate court cannot observe.

The conclusions of law and judgment follow from the
findings.   We believe no prejudicial error appears, and
the judgment is affirmed.

FULLERTON, C. J.; and ANDERS, MOUNT, and DUNBAR,
JJ., concur.