[No. 28970.   Department One.   June 22, 1943.]

RAYMOND H. LOHNES et al., Respondents, v. MEENK
LUMBER COMPANY et al., Appellants.[1]

Chas. H. Graves, for appellants.

Philip Tindall and John F. Walthew, for respondents.

MILLARD, J.—This is a suit to quiet title in plaintiffs
to certain real property in Seattle and to cancel two
deeds: One purporting to be a conveyance by plaintiffs
to Meenk Lumber Company of the property in ques-

[1]Reported in 138 P. (2d) 885.

tion; and the other a conveyance of the same property by Meenk Lumber Company to Laurel Lumber Company. Plaintiffs alleged that they were induced by misrepresentations of Meenk Lumber Company to sign a blank deed, a form which they never acknowledged before a notary and which was not dated, did not contain names of grantors or grantees or a description of any property whatsoever, and that, contrary to agreement, Meenk Lumber Company inserted therein description of the property in controversy and shortly thereafter conveyed that property to Laurel Lumber Company. Trial of the cause to the court, which made no findings of fact but stated the court was convinced that the deed was blank when signed by plaintiffs and that neither plaintiff ever acknowleged the instrument before a notary, resulted in decree in favor of plaintiffs. Defendants appealed.

■ The statute (Rem. Rev. Stat., § 10551 [P. C. § 1908-22]) requires every deed to be in writing, signed by the parties bound by that deed before some person authorized to take acknowledgments of deeds.

■ Appellants insist that the testimony of respondents to impeach their acknowledgment to the deed in question is uncorroborated, and invoke the rule that the validity of a notarial certificate of acknowledgment cannot be successfully challenged by the unsupported testimony of the grantors that they never acknowledged it. *Western Loan & Savings Co. v. Waisman,* 32 Wash. 644, 73 Pac. 703, *Thompson v. Schoner,* 58 Wash. 642, 109 Pac. 116, and *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35.

■ The determinative question is whether the testimony of the grantors that they never acknowledged the deed was corroborated.

The evidence, so far as pertinent, is summarized as follows: In 1938, shortly after respondents' arrival in Seattle from Nebraska, Meenk Lumber Company, through Mr. Meenk, its president, established respond-

ent husband in the retail lumber business. Respondents acquired record title to a block of building lots on which they commenced construction of houses for speculation and sale. To finance the project, Lohnes made construction mortgage loans on each, and obtained lumber and other building materials on credit from Meenk Lumber Company. Lohnes acquired all of the shares of capital stock of Laurel Lumber Company, which was insolvent and indebted to Meenk Lumber Company in the amount of approximately five thousand dollars. In November, 1939, Lohnes, who was then greatly in debt to Meenk Lumber Company, assigned to that corporation all of the shares of stock of Laurel Lumber Company.

In addition to the block of lots mentioned above, respondents acquired title to lot 17, block 2, Rose addition, King county, on which they intended to build their home, and in furtherance of that purpose they obtained a mortgage loan of $2,250 and commenced construction of the house.

On October 13, 1939, Mr. Lohnes signed an agreement to convey by quitclaim deed to Meenk Lumber Company four properties, one of which is the Rose addition property. Mr. Lohnes testified that October 13, 1939, Mr. Ruple, one of the officers of Meenk Lumber Company, conducted him from Lohnes' office to Mr. Meenk's apartment in Seattle, on which date an agreement prepared by Meenk was presented to him. After a hasty reading of the instrument, Lohnes signed same. He recalled that he and his wife had previously executed deeds to three of the properties, the description of which he recognized in the agreement, but he failed to notice that there was a fourth property—lot 17, block 2, Rose addition—which he and his wife intended for their home. He further testified that, ignorant of the inclusion of that property in the agreement, he signed one copy and took the other copy home with him. Respondents read the agreement and discovered that

included therein was the Rose addition property, to the conveyance of which Mrs. Lohnes insisted she would never consent. Mr. Lohnes at once telephoned to Mr. Meenk concerning the mistake. The latter assured respondents that his company did not want the Rose addition property, and, pursuant to that assurance, Mr. Meenk called at the office of Mr. Lohnes the next day, October 14, 1939. Mr. Lohnes again informed Mr. Meenk that respondents would not sign a deed to Rose addition property. Mr. Lohnes accompanied Mr. Meenk in the latter's automobile to the home of respondents, who were then informed by Mr. Meenk that if they would sign the deed in blank they would be protected from loss of their property to some unknown creditor. The agreement of October 13, 1939, was signed only by Mr. Lohnes and that signature was in black ink. Mr. and Mrs. Lohnes signed in green ink the blank deed Mr. Meenk showed to them.

Both respondents testified that there was no typing, no description of property, no dates, or anything else on that quitclaim deed other than the printing which "comes on the regular form of deed from the printer." Both respondents further testified that Mr. Meenk informed them that the deed was not valid until the descriptions, etc., were written into the instrument and until respondents acknowledged that deed before a notary. They were induced to sign the blank deed by the assurance of Mr. Meenk that they would be protected in the future from some unknown creditor. There was no mention of the Rose addition property being included in the deed as a security for payment of their indebtedness.

The quitclaim deed describes four pieces of property, the fourth being the Rose addition property which respondents contemplated would be their home, names respondents as grantors and Meenk Lumber Company as grantee, and purports to have been acknowledged before a notary by respondents as their act and deed

October 13, 1939. The following month, Meenk Lumber Company executed a quitclaim deed covering the same properties to Laurel Lumber Company, all of the shares of stock of which were owned by Meenk Lumber Company. The deeds were placed of record November 16, 1939. Twenty-seven months later, respondents, who lived in the house on the Rose addition lot for at least one year after this transaction, commenced this suit.

Mr. Lohnes testified that he never appeared before the notary public, who was attorney for appellants, and acknowledged the deed and that he never authorized the notarizing of the instrument. To the same effect is the testimony of Mrs. Lohnes, who never saw the notary prior to the time she testified at the trial of the case at bar. We are convinced, as was the trial court, by the testimony of Mr. Meenk that he went to the home of respondents with a printed but otherwise blank form of deed which he induced respondents to sign in blank. His testimony is corroborative, not contradictory, of the testimony of respondents. The testimony of Mr. Ruple, another officer of Meenk Lumber Company, tends to support, rather than refute, the testimony of respondents respecting their signing a blank form of deed which was later unauthorizedly made to appear to be the deed of respondents.

The notary testified that Mr. Lohnes and Mr. Ruple came to his office and that "Mr. Lohnes, at least, acknowledged his signature to the deed," October 13, 1939. He had no recollection of taking acknowledgment of, or of ever talking to, Mrs. Lohnes. He refused to testify whether he had ever seen Mrs. Lohnes prior to the time her acknowledgment was purportedly taken. In effect, he admitted that he certified an acknowledgment which Mrs. Lohnes never made. In view of the fact that he certified to an acknowledgment which Mrs. Lohnes never made and in view of his evasive testimony respecting the taking of the acknowledgment of

Mr. Lohnes, the trial court doubtless was convinced, as are we, that the notary certified to an acknowledgment which neither respondent made.

There are other circumstances corroborative of the testimony of respondents. Mr. Lohnes' signature to the agreement dated October 13, 1939, is in black ink. His and his wife's signatures to the deed are in green ink, but we note that the signature of the notary to the deed is in black ink. It is evident that the two instruments (the agreement and the deed) were signed by Mr. Lohnes at different places and times. If, as appellants insist, a completely filled out deed was ready for his signature when he signed the agreement, it is not clear why Mr. Lohnes did not sign the deed at the same time with ink of the same color he used in signing the agreement.

If we accept as true the testimony of Mr. Ruple that he and Mr. Meenk took the agreement and completely filled out deed to respondents' home the evening of the day Mr. Ruple obtained them from the notary, who was appellants' attorney, why, if respondents signed the deed freely and voluntarily that evening at their home, did they not sign the agreement at the same time and in the same green ink they used in signing the deed? This not only supports testimony of respondents that Mrs. Lohnes refused to sign the agreement and refused to sign any deed if the Rose addition property was included in either instrument, but also corroborates their testimony that they were induced to sign a blank deed on assurance that Rose addition property would be excluded as security for their indebtedness. It will be remembered that the agreement is signed only by Mr. Lohnes and Meenk Lumber Company and that the deed is signed by both respondents. The deed and agreement had to do with the same transaction.

The agreement stated the purpose of the deed and how that purpose was to be effectuated. Mrs. Lohnes was named as one of the parties to the agreement and

a place was provided for her signature to the agreement. If Mrs. Lohnes had been willing to sign the completed deed in order to effectuate the purpose recited in the agreement, surely she would have been willing to sign the agreement. That Mrs. Lohnes refused to sign the agreement, because included therein was the Rose addition, or home property, is established by the testimony of Mr. Meenk and Mr. Ruple as well as the testimony of respondents. In view of that fact, it is unbelievable that she ever signed a deed which included the Rose addition property with the properties which were thereby conveyed.

■    While a certificate of acknowledgment to a deed duly executed as required by law is *prima facie* evidence of the execution of the deed acknowledged and cannot be impeached by uncorroborated testimony of the grantors, a certificate of acknowledgment is not conclusive, and its validity may be successfully challenged where the testimony of the grantors that they had not acknowledged the deed is corroborated, as it was in the case at bar.

The cases cited are distinguishable from the case at bar. In *Western Loan & Savings Co. v. Waisman, supra,* we held that a notary's certificate of acknowledgment to a mortgage could not be impeached by the testimony of the mortgagors that the wife never acknowledged it, where they admitted that the wife signed the instrument and that they received and used the money and their denial of the wife's acknowledgment was uncorroborated by other positive and credible evidence besides their own.

In *Thompson v. Schoner, supra,* we held that the evidence, contradicting a certified copy of the record of a deed and showing that the grantors did not, in fact, execute and acknowledge the same, was insufficient, where it merely appeared that one of the grantors, on an improper cross-examination, could not say whether she executed the deed and she did not deny that she

had acknowledged it, having left everything to her attorney, who testified that the deed had been executed and delivered for the purpose of conveying the title.

In *Chaffee v. Hawkins, supra,* we held that the burden of impeaching the certificate of acknowledgment of a mortgage, fair on its face, was not sustained by the unsupported evidence of the mortgagors to the effect that they did not agree or intend to give a mortgage and signed the papers supposing them to be notes, and did not acknowledge them, where their testimony is denied by all who were present and challenged by all the concomitant facts and circumstances.

In *Cooke v. Cain,* 35 Wash. 353, 77 Pac. 682, in explanation of the language employed in *Western Loan & Savings Co. v. Waisman, supra,* we said:

"Appellant urges that the uncorroborated oral evidence of a party should not be held to be sufficient proof that a written contract has been orally rescinded. We find that a few of the cases practically go so far as to announce such a rule, but the language of most of the opinions is restricted to the statement, in effect, that the oral evidence necessary must be 'clear, cogent, and convincing,' as against the party who denies it, and who seeks to sustain the writing. In *Quinn v. Parke & Lacy Mach. Co.,* 9 Wash. 136, 37 Pac. 288, this court, in a majority opinion, used somewhat strong language declaratory of the rule contended for by appellant. The application of the rule so broadly stated seems not to have been required in that case, since the opinion states that there was no evidence to sustain the allegations concerning a rescission except the mere assertion of one that the machinery was not delivered under the written agreement, there being actually no testimony, by even a party, that an *agreement* to rescind was made. Appellant also cites the opinion of this court in *Western Loan & Sav. Co. v. Waisman,* 32 Wash. 644, 73 Pac. 703, where we refused to hold that a certificate of acknowledgment had been impeached by the uncorroborated testimony of two mortgagors. We, however, based the decision upon the view that a certificate of acknowledgment is a record of an official act of such dignity and importance that it ought not, for reasons

of public security, to be held that it may be overcome by the mere uncorroborated testimony of an interested party.

"Were we now confronted with a case with no corroboration whatever to support the testimony of parties, we should hesitate to say that rescission is not established for the mere reason alone that such corroboration may be lacking. It seems to us that the application of an inflexible rule of that kind might, in some cases, preclude the doing of what the courts may be firmly convinced should be done, and that the deciding mind should, in each case, be free to accept that which is 'clear, cogent, and convincing,' even though it be the testimony of a party only. It is none the less true, however, that such testimony should be scrutinized with great care and caution, and its convincing force must depend upon the character of the witnesses and the circumstances of each case. Indeed, in most of the cases there are probably attending circumstances which may, of themselves, be either corroborative of the testimony of the party, or may weigh against it."

The decree is affirmed.

SIMPSON, C. J., STEINERT, and MALLERY, JJ., concur.

JEFFERS, J. (dissenting)—I dissent. We have in this case not only the fact that the certificate of acknowledgment to this deed is *prima facie* evidence of its execution, but we have the testimony of Mr. Graves, who drew the deed, and of Mr. Ruple, who had charge of this transaction for the Meenk Lumber Co., and of Mr. Meenk, that the deed was complete in all respects, including a description of the Rose addition property. Mr. & Mrs. Lohnes, grantors, were the only ones to testify the deed was in blank, when signed by them. The respondents did not overcome the *prima facie* evidence established by the deed itself.