[No. 12904. Department One. January 7, 1916.]

Stephen E. Chaffee, *Trustee etc., Appellant,* v.
Luther Hawkins *et al., Respondents,*
John H. Lynch, *Intervener.*[1]

Acknowledgment—Certificate—Impeachment—Proof—Evidence —Sufficiency. To impeach the certificate of acknowledgment of a mortgage, fair on its face, the evidence must be clear and convincing; and the burden is not sustained by the unsupported evidence of the mortgagors, two illiterate colored people, to the effect that they did not agree or intend to give a mortgage and signed the papers supposing them to be notes, and did not acknowledge them, where their testimony is denied by all who were present and challenged by all the concomitant facts and circumstances.

Mortgages—Presumption — Deficiency Judgment — Liability of Grantee—Deeds—Covenants. A deed of mortgaged premises, made subject to liens generally, and subject to a particular mortgage which was described and which the grantee assumed to pay, does not render the grantee liable to a deficiency judgment upon another and prior mortgage, as a vendee is liable on such a covenant only where it is clear that he intended to pay a lien or indebtedness.

Appeal—Abandonment—Second Notice. Upon giving notice of abandonment of an appeal, a second appeal may be taken within the time limited, and it is immaterial that the first notice and bond was not withdrawn from the files.

Appeal—Record—Conclusiveness. A formal order reciting the date of overruling a motion for a new trial should be corrected below and not questioned for the first time in the briefs.

[1]Reported in 154 Pac. 143.

APPEAL—TIME FOR TAKING—ENTRY OF JUDGMENT. The time for taking an appeal runs from the date of entering final judgment and not upon an oral announcement or the filing of a memorandum opinion.

APPEAL—REVIEW—FINDINGS. When clear, cogent and convincing evidence is necessary to overcome a presumption, findings upon conflicting evidence will be reversed if the evidence supported by the presumption preponderates against the findings.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered February 15, 1915, upon findings in favor of the defendants, in an action to foreclose a mortgage, tried to the court. Reversed.

*Stephen E. Chaffee,* for appellant.

*John F. Chesterley* and *Ira P. Englehart,* for respondents.

*John H. Lynch* and *Davis & Morthland,* for intervener.

CHADWICK, J.—Prior to October 22, 1913, defendants Luther Hawkins and Jennie Hawkins, his wife, were indebted to several persons upon certain promissory notes in the sum of $80.10 each, and to another in the sum of $274 upon a judgment theretofore rendered, in all, aggregating the sum of $755.60.

Appellant is an attorney at law and had, prior to that time, begun a suit against the defendants Hawkins to recover the sum due upon the promissory notes. In consideration of a dismissal of the suit and the satisfaction of the judgment that had theretofore been entered against them, the defendants Hawkins made a new note, and a mortgage upon a forty acre tract of land, the legal title to which was then in them.

On February 1st, 1913, the defendants Hawkins had employed the intervener, Lynch, to defend an action involving their land, and had given a mortgage (in form a quit claim deed) in the sum of two thousand dollars to secure his attorney's fees and the expenses of the suit. In January, 1914, defendants Hawkins made, executed and delivered their deed

of warranty conveying the mortgaged premises to defendants Chesterley:

"Subject, however, to all liens, incumbrances and taxes which are a valid and subsisting charge upon said premises, and subject to a quit claim deed intended as a mortgage executed by Luther Hawkins in favor of John H. Lynch recorded in Volume 133 of deeds at page 634, deed records in the office of the auditor of Yakima county, Washington, which said grantee hereby assumes and agrees to pay as a part of the purchase price above mentioned."

Thereafter appellant, acting as trustee for his clients, began this action to foreclose the lien of his mortgage. Mr. Lynch intervened, and from the complaint, the petition and answer in intervention, and the answer of the defendants, the issue whether appellant's mortgage was in fact executed, is drawn.

The court below found that the claims represented by appellant were valid claims at the time they were executed; that at no time, either before or at the time the mortgage purports to be executed, did the defendants Hawkins, or either of them, promise or agree to execute any mortgage, or expect or intend to do so, and that,

"As soon as the notes and said mortgage were prepared they were placed before the defendants Hawkins for signature and the said Hawkins and wife, relying upon Mr. Chaffee to prepare notes for their signature in accordance with the understanding and agreement theretofore had by them with him, did not read over the said notes and did not observe that there was with the same any document purporting to be a mortgage or any document other than a note, and appended their signature to the various papers as they were presented to them for that purpose; that after so doing they immediately left the office without either acknowledging or intending to acknowledge the execution of any mortgage, and never knew that they had signed a mortgage until the commencement of this action.

"That the defendants are illiterate colored people and, although able to write and read to some extent, yet they are slow of intellect, thought and speech, and it is difficult for

them to comprehend business affairs of the nature involved in this suit."

The court further found that defendants Chesterley took their deed without actual knowledge of the existence of the appellant's mortgage; that they were not bound thereby, and had taken title to the land subject only to the lien of intervener's mortgage. The court accordingly held that appellant have judgment against defendants Hawkins for the full amount claimed and $125 attorney's fees; that the mortgage given to secure him as trustee was null and void; that the Lynch mortgage was a prior lien for $2,000, less the sum of $294 which had been paid thereon; and that title to the land was in the defendants Chesterley.

Appellant's mortgage is in proper form and was seasonably recorded. It purports to be acknowledged before H. L. Miller, who was the cashier of the bank at Sunnyside, and is attested with his seal. The instrument and its acknowledgment is sustained by the testimony of the appellant and by the notary. The testimony of the defendants Hawkins is to the effect that they did not agree, and did not intend, to sign a mortgage; that if they did so the mortgage was given in ignorance of the fact that it was a mortgage. We have not overlooked the answer of the husband defendant that the signature was not his signature, but the whole of his testimony makes it plain—and it is not seriously contended that it is not so—that he intended to say no more than that it was not a binding signature.

A collateral issue was developed on the trial. It became uncertain whether the instrument was acknowledged in the office of the appellant or at the bank. Much is made of this uncertainty by counsel; but in the light of the whole record and the established principle that a deed fair upon its face, signed by the grantors and duly acknowledged, imports verity which courts will not lightly disregard, constrains us to hold that the place the deed was acknowledged is not very material.

Appellant contends that one who has signed a deed will not be heard to question it or to challenge the certificate of the notary who has taken and certified to his acknowledgment. There is abundant authority to sustain this premise, but we think the better doctrine is that a grantor may impeach such certificate for fraud or other reasons finding sustenance in any of the recognized principles of equity. We think the true rule is as stated in *Western Loan & Sav. Co. v. Waisman*, 32 Wash. 644, 73 Pac. 703, where the court said:

"That the evidence required to overcome a certificate of acknowledgment must be clear and convincing is generally held, and it may well be said that where fraud or duress is not shown as a circumstance attending an acknowledgment, the unsupported testimony of parties directly interested in the impeachment is. not of that clear and convincing character that is necessary to overcome a record and an official act."

The doctrine is sustained in *Drew v. Bouffleur*, 69 Wash. 610, 125 Pac. 947, and *State v. Hatfield*, 65 Wash. 550, 118 Pac. 735, Ann. Cas. 1913 B. 895.

See, also, 1 R. C. L. 294, as follows:

"Impeachability for fraud, accident, or mistake.—It is a maxim of the law that fraud vitiates all things, and certificates of acknowledgment are no exception to the rule. The other grounds upon which written instruments generally are open to attack may also be made the basis for the impeachment of certificates by the introduction of parol evidence. Many courts, reasoning that the officer taking an acknowledgment acts judicially, have asserted that if a certificate is regular on its face parol evidence may not be received to contradict it in the absence of an allegation of fraud, mistake, collusion, imposition or the like. According to this view, certificates are not entitled to the precise degree of credit that is given to judgments of courts of record; but they are held to be entitled to much of the weight and authority of records, and to be subject with some modifications to the same general principles of construction and intendment which apply to other matters of the same class."

All the books agree, however, that the evidence offered to impeach an acknowledgment regular in form must be clear, cogent, and convincing.

1 Cyc., at page 623, lays down the rule:

"Where a certificate of acknowledgment is regular on its face, a strong presumption exists in favor of its truth. . . . The proof to overthrow a certificate regular on its face must be so clear, strong, and convincing as to exclude every reasonable doubt as to the falsity of the certificate."

In the case at bar, while it is true that the defendants Hawkins deny the mortgage, their testimony is not supported by any other witness, nor do there seem to be any equities which can be said to sustain their contention. On the other hand, their testimony is denied by all who were present, and is challenged by all the concomitant facts and circumstances. A pending action was dismissed. A judgment was satisfied which operated to release the property from the judgment lien. The mortgage was recorded and became a matter of constructive notice to the purported makers, and it may be fairly inferred from the record, a matter of notice to their attorney, the present intervener, and the defendants Chesterley. We conclude that the defendants and the intervener have not sustained the issue tendered by them by evidence that is strong, convincing, and cogent.

The only question now necessary for us to decide is whether appellant is entitled to a deficiency judgment against defendants Chesterley. The law is that a deed taken subject to prior liens does not bind the grantee to pay, unless it is stated in the instrument or is shown by independent evidence that it was taken in fact subject to the payment of the existing incumbrance, or that the existing incumbrance was a part of the purchase price. It seems clear to us that the assumption clause in the Chesterley deed did not bind the vendees to pay or make them personally liable for any lien or incumbrance other than the mortgage owned by the

intervener.   The deed was made subject to liens generally, and subject to a particular lien which is described and which the grantee assumed to pay.   Or, if the language be doubtful, appellant is in no better position.   A vendee is bound under such covenants only when it is clear that it was his intention to assume and pay a lien or incumbrance.   Jones, Mortgages, § 748, and citations.   27 Cyc. 1343.   From this it follows that, if it be doubtful, the doubt will be resolved in favor of the vendee, and a recovery against him will be denied.

The court below held jurisdiction of the case until the case of *Union Central Life Ins. Co. v. Hawkins*, 84 Wash. 605, 147 Pac. 199, should be finally decided in this court, in order to determine whether the intervener was entitled to the full amount of his mortgage less the sum paid.   That case being disposed of favorably to the intervener's clients, he is entitled to a foreclosure of his lien.

The case is reversed, and remanded with directions to enter a decree that will protect the lien of appellant and the lien of the intervener in the order of their priority.

MORRIS, C. J., MOUNT. ELLIS, and FULLERTON, JJ., concur.

## ON PETITION FOR REHEARING.

### [Decided May 1, 1916.]

PER CURIAM.—Respondents Chesterley have filed a petition for rehearing in which they complain that the court has not passed upon a motion to dismiss the appeal, and that we have reached a wrong conclusion upon the facts.

The first ground of the motion to dismiss is that appellant, having given a notice of appeal and bond, this court was vested with jurisdiction, and that such notice and bond could not, thereafter, be withdrawn upon the *ex parte* motion of the appellant; that the notice and bond having been actually withdrawn, there is no valid bond upon which respondents might

depend if successful in this court. We did not notice this ground of motion for two reasons; the respondents did not prevail upon the appeal, and appellant thereafter gave notice that he had abandoned his attempted appeal and had filed another notice and appeal bond within the time allowed for appeal. This, appellant had a right to do under the statute, and it is a matter of no materiality whether the original notice and bond were withdrawn or allowed to remain as a part of the files of the court. Rem. & Bal. Code, § 1735 (P. C. 81 § 1223); *Carstens & Earles v. Seattle*, 84 Wash. 88, 146 Pac. 381; *State v. Miller*, 80 Wash. 487, 141 Pac. 1139.

We did not notice the second ground for dismissal of the appeal, because the contention of the parties rests upon a difference as to when the judgment was rendered, and when a motion for a new trial was overruled. Inasmuch as there is a formal order of the court reciting that the motion for new trial was argued and overruled on the 26th day of January, 1915, we did not feel at liberty to question it upon respondent's assertion that they did not know of its existence until in the preparation of their defense on this appeal. The place to correct such errors is in the court below.

Another and sufficient reason for passing the second ground of the motion to dismiss is that we have heretofore held that the announcement of the court's intention, either orally or by way of memorandum opinion, is not the entry of a judgment; that the appealable order is the final and formal judgment of the court. *In re Christensen's Estate*, 77 Wash. 629, 138 Pac. 1. *Wooddy v. Seattle Elec. Co.*, 65 Wash. 539, 118 Pac. 633, is not in point. That case was an action at law. There had been a final and formal judgment of nonsuit, and a dismissal entered prior to the time of filing the motion for a new trial. Nine months later, counsel had the court sign a judgment. It was properly held that the time for appeal could not be enlarged in that way. There the motion for a new trial was timely made. Here it was prematurely made.

The fact that a motion for a new trial was made prematurely would not change the rule or make a judgment out of the court's memorandum. The formal judgment was entered on the 15th day of February, 1915, and an appeal was taken within the statutory time.

Counsel strenuously insist that we should have followed the trial judge in his findings of fact; that, by our ruling, we have denied to the trial judge, who is admittedly trained as an expert in weighing and sifting facts, the same consideration we would give to the verdict of a jury if it had found in the same way. In jury cases, courts will not assume to pass upon the weight of the testimony if there be fact, or inference from the facts, which would sustain the verdict; and we repeatedly affirm verdicts where we might have held to the contrary if we were free to do so. In cases tried by the court and in all suits in equity, the statute puts upon us the duty of trying the case *de novo*. If, upon a review of the evidence, it seems to preponderate in favor of the judgment, or we cannot say that it does not, we affirm the judgment or decree. But it seems to us that there is more than a question of preponderance here. We may grant that there is a bare preponderance, but the law demands more. To overcome a formal instrument and certificate of acknowledgment, the proof must be clear, cogent, and convincing. This is obviously a requirement of more than a bare, or even a measurable, preponderance of the spoken testimony. It means that the testimony of witnesses shall not be weighed, the one against the other only, but that the testimony of the one shall be measured against the other, supported as it is by one of the strongest presumptions of fact known to the law; that is, that an acknowledgment to a deed formally certified imports verity.

As clear a statement of the law as will be found is in *Lickmon v. Harding*, 65 Ill. 505.

"Public policy requires such an act should prevail over the unsupported testimony of an interested party, otherwise, there would be but slight security in titles to land."

Mr. Devlin, citing many authorities, deduces the following formula:

"The evidence to impeach a certificate must be clear and convincing and must establish the fact beyond a reasonable doubt." 1 Devlin, Real Estate (3d ed.), § 529.

This is but a corollary of the statement that the certificate imports verity, and the rule that the certificate of a notary will not be overcome, even as between the parties, unless fraud and collusion be clearly established. We find nothing upon which to base a finding of fraud. The notary is not impeached in his personal character. The testimony of the Hawkins that they did not sign, or intend to sign, a mortgage is not enough (1 Devlin, Real Estate, § 529); or the fact that they were ignorant and subject to imposition, although a circumstance, is not enough (*Hersner v. Martin*, 8 Wash. 698, 36 Pac. 1096); or that it would have been more to the business interests of the Hawkins to refuse to sign the mortgage.

Neither is the fact that there was some confusion between the appellant mortgagee and the notary as to the place where the mortgage was acknowledged enough to destroy the legal effect of the certificate. The question of the place was collateral, going only to the credibility of the witnesses. It was, in a sense, immaterial to the real issue, the defense being that the mortgage was not signed or acknowledged at all.

Counsel still insist, as we understand, that we have put an unwarranted burden upon the Hawkins when we hold them to some proofs of statement or circumstance which may be fairly said to be independent; that there were only four witnesses, two against two; that this holding compels the Hawkins to prove a negative, which is humanly impossible; that, where it is impossible to call other witnesses, the court must follow those who "tell a straightforward story," and reject the others who are charged with shifting and changing. Granting, for the sake of argument, only, that the record

bears out counsel's assumptions, we still have the formally acknowledged mortgage, which must be given its proper weight. The sum of counsel's contention is that the instrument should be rejected because appellant and the notary are uncertain as to the place of acknowledgment. Our holding is that this is not a circumstance of sufficient importance upon which to predicate a finding of fraud. The law was settled in the *Waisman* case. It will bear further quotation:

"Public morals and public security are best served by the requirement of that degree of proof which is disinterested and unaffected by any private advantage sought, before a certificate of acknowledgment shall be held to be impeached." *Western Loan & Sav. Co. v. Waisman*, 32 Wash. 644, 73 Pac. 703.

See, also, *Thompson v. Schoner*, 58 Wash. 642, 109 Pac. 116.

Nor does it follow that, because Mrs. Hawkins was not a party to the original debts, she is a corroborating witness. She signed the notes which the mortgage was given to secure and, under authorities so numerous that to assemble them would be an idle waste of time, became a party to the transaction now sought to be overturned and is bound in any event, and by the rules of evidence affecting parties to a questioned transaction.

Because of the insistence of counsel, we have reexamined the record and find nothing that would warrant a reversal of our first holding. Complaint is made that a judgment was taken against the Hawkins, and that they are liable for any deficiency which may remain after the property has been applied to the satisfaction of the debt. It is true, as asserted, that appellant, who appeared for himself at the trial, said that he was asking no more than a foreclosure of his mortgage, and was not seeking a deficiency judgment; but the court did find the full amount demanded to be due, and did render a judgment for that sum. No appeal was taken by the Hawkins, and it follows that, so far as respondents are

concerned, their defense cannot be carried beyond a denial of the legal existence of the mortgage. Upon this issue, they have been heard fully.

We adhere to our opinion that the mortgage is a valid incumbrance, and a present lien upon the property.