[No. 24104. Department Two. February 25, 1933.]

IRA C. HAWLEY, *Appellant,* v. PRIEST RAPIDS ICE & COLD STORAGE COMPANY *et al., Respondents.*[1]

*Moulton & Powell* and *Geo. O. Beardsley,* for appellant.

*LaBerge, Cheney & Hutcheson,* for respondents.

[1]Reported in 19 P. (2d) 400.

BEALS, C. J.—Plaintiff instituted this action praying for an injunction restraining defendants from selling some fourteen thousand boxes of apples grown and claimed by plaintiff, upon which defendant J. & H. Goodwin, Ltd., a corporation (hereinafter referred to as respondent or Goodwin), asserts a lien. At the time of the institution of the action, the apples were in storage in the warehouse · of defendant Priest Rapids ·Ice & Cold Storage Company, of White Bluffs, Washington. Pending the trial, the fruit was sold, and the proceeds, amounting to something over seventeen thousand dollars, deposited in the registry of the court to abide the result of the action.

The case was first tried before the Honorable John Truax, then judge of· the superior court for Benton county, who filed a memorandum opinion indicating a decision in plaintiff's favor and stating, *inter alia,* "Let findings and judgment be prepared for entry . . ." Judge Truax died before findings of fact, conclusions of law and judgment could be prepared, whereupon plaintiff filed a motion for the entry of judgment pursuant to the memorandum opinion. By stipulation of the parties, this motion was heard by the Honorable A. W. Hawkins, judge of the superior court for Yakima county, who after a hearing denied the motion. The parties thereupon stipulated that the record made before Judge Truax be submitted to the Honorable Arthur McGuire, judge of the superior court for Kittitas county, for decision on the merits. Judge McGuire decided the case and entered a decree granting defendant and cross-complainant Goodwin the lien which it claimed, and impressing the same upon the proceeds of the sale of the apples. From this decree plaintiff appeals.

In the first place, appellant argues that Judge Hawkins erred in refusing to enter judgment in his

favor upon the memorandum opinion filed by Judge Truax. Such a memorandum has no greater force than an oral opinion rendered from the bench. Of itself, it effects nothing; it merely indicates the conclusion which the trial judge has then reached upon some or all of the questions presented for determination, the final decision to be entered still remaining within the mind of the court.

The opinion filed in the case at bar cannot be considered as constituting findings of fact, as it expressly directed that findings be prepared. It is, of course, not a judgment, and appellant did not contend that it should be considered as such, but filed a motion for the entry of a judgment in his favor based upon the memorandum opinion. The filing of such a memorandum opinion as is now before us leaves the matter still open and undetermined, and under the circumstances here shown, the trial court did not err in refusing to enter judgment thereon. *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35; *Morehouse v. Everett,* 136 Wash. 112, 238 Pac. 897; *Fogelquist v. Meyer,* 142 Wash. 478, 253 Pac. 794; *McClelland v. McClelland,* 170 Wash. 170, 15 P. (2d) 941.

This conclusion is supported by the recent opinion of this court in the case of *State ex rel. Wilson v. Kay,* 164 Wash. 685, 4 P. (2d) 498, in which it was held that the successor of a deceased judge had no jurisdiction to enter judgment on an oral opinion of his predecessor. The recent opinion of this court in the case of *State ex rel. Bloom v. Superior Court,* 171 Wash. 536, 18 P. (2d) 510, recognizes this rule, a different result having been reached because it clearly appeared that the trial court had made formal findings of fact upon which his successor should enter a judgment.

The controversy between the parties herein arose over conflicting claims to the apples stored by plain-

tiff, and is based upon warehouse receipts therefor issued by the defendant storage company. During the spring of 1928, appellant orally agreed with one K. Lane Johnson for the marketing of appellant's apple crop. Pursuant to this agreement, the exact terms of which are not important to this controversy, Johnson advanced to appellant, during the growing and harvesting season, several thousand dollars.

Early in October, appellant delivered the apples to the storage company, no warehouse receipts being issued therefor at that time. Late in November, Johnson requested appellant to have warehouse receipts issued and delivered to him (Johnson) to cover some heavy drafts drawn by appellant. The receipts not being forthcoming, Johnson a short time later took the matter up with the manager of the storage company, and November 26 this company issued to Johnson three warehouse receipts covering the apples stored by appellant. Whether or not appellant knew of the issuance of these receipts before or immediately after the same were delivered to Johnson, is a disputed question. In any event, he knew as early as November 28 that the receipts had been delivered, and there is evidence in the record to the effect that appellant then said that such action was satisfactory to him.

December 7, 1928, Johnson borrowed from Yakima Finance Company the sum of fifteen thousand dollars, for which he gave his note secured by a pledge of the warehouse receipts. In a companion case to this, these receipts were held to be negotiable. *Roberts v. Goodwin, Ltd.*, 166 Wash. 382, 7 P. (2d) 8. March 10, 1929, Johnson arranged with G. H. Taylor, the manager of respondent Goodwin, a foreign corporation with which Johnson had been dealing for a considerable period of time, for a loan of twenty thousand dollars.

On receiving the money a few days later, Johnson assigned the warehouse receipts to Goodwin as security, subject to his indebtedness to Yakima Finance Company. About the middle of April following, Goodwin paid Yakima Finance Company the balance due it from Johnson, amounting to approximately $10,800, taking an assignment of Johnson's note and delivery of the warehouse receipts.

Appellant challenges respondent's good faith in its transaction with Johnson, contending that respondent entered into this deal with knowledge of appellant's ownership of the apples, and that, consequently, it should be held that appellant's claim is superior to that of respondent. Appellant argues that, because Johnson and one Lowe, respondent's agent in Yakima, during the year 1928 used desks in the same office, and because of certain portions of Lowe's testimony and other evidence which appellant contends indicate that both Lowe and Taylor knew of appellant's ownership of the apples, it should be held that respondent's claim should be denied. Appellant also relies upon the fact that upon the face of the warehouse receipts appear the words, "Ira Hawley lot" or "R. J. Roberts lot," as showing knowledge of appellant's rights on the part of respondent. Under date May 7, 1929, respondent's New York office telegraphed its Yakima representative concerning this transaction, and appellant contends that statements in this wire show that Mr. Taylor, when he agreed to make the loan to Johnson, knew that appellant owned the apples.

In the case of *Roberts v. Goodwin, supra,* it was held that the warehouse receipts were negotiable. As to the other portions of the record upon which appellant relies in this connection, we are satisfied that the trial court correctly held that the same were insufficient to justify a finding to the effect that the

loan which respondent made to Johnson was made with knowledge of appellant's ownership of the apples, or that any facts existed which, in law, require a holding that respondent was put on notice concerning appellant's rights. Johnson testified that he told Taylor that the apples belonged to appellant, and that he (Johnson) had no more than an equity therein to repay him for advances made to appellant and to pay his commissions. Statements made by Johnson in this connection were contradicted by Taylor, and we are wholly unconvinced by Johnson's extremely improbable story of the transaction.

In dealing with the Yakima Finance Company, Johnson failed to disclose Hawley's ownership of the apples. No reason appears why he should have been more frank with Mr. Taylor. Indeed, if Johnson desired to procure money through Mr. Taylor, he apparently had every reason for not disclosing the true situation. For approximately three years prior to this transaction, Johnson had been marketing his own and consigned fruit through respondent, and as a result of these transactions had become indebted to respondent in a sum amounting to more than ninety thousand dollars; as security for which indebtedness respondent had no more than a quitclaim deed to property worth less than one-third of the amount of the indebtedness. Subsequent to July 7, 1928, respondent, evidently being dissatisfied with the state of its account with Johnson, made no more open advances to him, and by March 10, 1929, Johnson's indebtedness had been reduced to something less than seventy thousand dollars.

It certainly does not seem reasonable that Taylor, as an officer of respondent, having succeeded in reducing the Johnson account by some twenty thousand dollars, would be willing to increase the indebtedness without requiring good security for any new loan. If

Taylor did any such thing, it would seem that, in so doing, he was extremely careless of his employer's interest, and as we read Johnson's testimony, he intended to infer that such was the case. We find in the record no justification for this insinuation, and we agree with the trial court in concluding that there is nothing in the record which requires a finding of bad faith on the part of respondent Goodwin.

This being true, we are satisfied that the trial court correctly determined the main issue between the parties.

■■ Appellant contends that the trial court erroneously taxed against him certain items by way of costs. He first excepts to the allowance of costs for the taking of Johnson's deposition, contending that the same was not taken for the purpose of eliciting facts material to the issues. The trial court found that portions of Johnson's deposition were material, and from the record before us we cannot find that the trial court's decision upon this point was incorrect. This action was, in part, based upon Johnson's note in favor of the Yakima Finance Company, which provided for the allowance of a reasonable attorney's fee in case of suit. Such an attorney's fee was properly allowed as against the property upon which a lien was claimed. We find no error in the ruling of the trial court in allowing as costs certain witness fees and stenographic expenses.

Finding no error in the record, the judgment appealed from is affirmed.

Tolman, Main, and Steinert, JJ., concur.